| 62 | 315 |
|---|---|
| 101 | ¹350 |

THE LOMBARD INVESTMENT COMPANY, Respondent, v. DWELLING HOUSE INSURANCE COMPANY, Appellant.

### Kansas City Court of Appeals, May 6, 1895.

1. **Insurance**: MORTGAGE CLAUSE: PROOFS OF LOSS. While a long form mortgage clause attached to an insurance policy may have the effect of making separate and independent insurances between the insurer and mortgagor on the one hand, and the insurer and the mortgagee on the other, yet the contract between the insurer and the mortgagee is the policy as affected by the clause, and the mortgagee can not recover on his contract unless proofs of loss are made by himself or the mortgagor as required by the policy.

2. ———: PROOFS OF LOSS. The policy in this case requires proofs of loss within a definite time.

*Appeal from the Jackson Circuit Court.*—HON. E. L. SCARRITT, Judge.

REVERSED.

*Fyke, Yates & Fyke* for appellant.

The condition of the long form mortgage clause, to the effect that the insurance as to the interest of the mortgagee only shall not be invalidated by any act of the mortgagor, or owner, does not relieve the assured in this case from the necessity of rendering proofs of loss within the time required by the policy. We cite the only reported case deciding the exact question: *Graham v. Ins. Co.*, 8 Daly, 421; affirmed 87 N. Y. 69. The language of the mortgage clause is that the insurance shall not be invalidated by any act or neglect of the mortgagor. This clearly has reference to acts on the part of the mortgagor which, according to the policy conditions, might make the policy null and void. This is the legal, as well as the common

sense, definition of the word. 1 Rapalje's Law Dictionary, p. 680; 1 Am. and Eng. Encyclopedia of Law, 780. The failure to render timely proofs does not invalidate a policy of insurance, does not render it null and void in any sense. The making of proofs is something that must be done after the loss, whether it is claimed that the policy was void at the happening of the loss or not, as an essential requisite to the maintenance of the cause of action.

*Gage, Ladd & Small* for respondent.

(1) Said mortgage clause constituted a separate and independent contract between the insurance company and the plaintiff. It did not require proofs of loss to be made. The policy itself required the assured (which referred to Mrs. Neal) to make proofs of loss before she could recover anything on account of her interest, but the mortgage clause expressly provided that no act, or neglect of the owner of the property should invalidate the insurance as to the interest of the plaintiff mortgagee, and that in case of the payment of the loss to the plaintiff (the policy being void as to the owner), the insurance company should become subrogated to the rights of the plaintiff in the property, subordinate to any claim of the plaintiff for any balance that might remain of the debt secured, over and above the insurance paid. Such provisions constitute an absolute, unconditional promise to pay any loss or damage sustained to the mortgagee, to the extent of the mortgagee's interest, and the instructions of the court below were correct. The following authorities are expressly in point: *Eastburn, Hastings et al. v. Ins. Co.*, 73 N. Y. 141; *Eddy v. Ins. Co.*, 20 N. Y. Supplement, 216; *Ins. Co. v. Allcutt*, 97 Ill. 445. (2) Furthermore, these policies do not provide expressly

that, unless proof of loss is made within thirty days the policy shall be void. Proof could have been made, therefore, at any time before suit brought. *Kahnweiler v. Ins. Co.*, 57 Fed. Rep. 562, and other cases above cited; *McCullough v. Ins. Co.*, 31 S. W. Rep. 207.

STATEMENT BY ELLISON, J.

The following is the mortgage clause referred to in the opinion of the court:

"Loss, if any, payable to the Lombard Investment Company, mortgage beneficiary, or assigns, as herein provided; it being hereby understood and agreed that this insurance as to the interest of the mortgagee or beneficiary or assigns only therein shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured, nor by the occupation of the premises for purposes more hazardous than those that are permitted by the terms of this policy. Provided that in case the mortgagor or owner neglects or refuses to pay any premium due under this policy, then on demand the mortgagee or beneficiary shall pay the same. Provided that the mortgagee or beneficiary shall notify this company of any change of ownership or increase of hazard which shall come to his or their knowledge, and shall have permission for such change of ownership or increase of hazard duly indorsed on this policy. And provided further that every increase of hazard not permitted by this policy to the mortgagor or owner shall be paid for by the mortgagee or beneficiary on reasonable demand, and after demand made by this company upon and refusal by the mortgagor or owner to pay according to the established schedule of rates. It is, however, understood that the company reserves the right to cancel this policy as stipulated in the printed conditions in said policy and also to cancel

this agreement on giving ten days notice of their intentions to the mortgagee or beneficiary named therein, and from and after the expiration of the said ten days, this agreement shall be null and void. It is also agreed that whenever this company shall pay the mortgagee or beneficiary any sum for loss under this policy and shall claim that as to the mortgagor or owner no liability therefor exists, it shall at once, and to the extent of such payment, be legally subrogated to all of the rights of the party to whom such payment shall be made under any and all securities held by such party for the payment of said debt. But such subrogation shall be in subordination to the claim of said party for the balance of the debt so secured. Or, said company may, at its option, pay the mortgagee or beneficiary the whole debt so secured with all the interest which may have accrued thereon, and shall thereupon receive from the party to whom such payment shall be made an assignment and transfer of said debt, with all securities held by said party for the payment thereof. In case of other insurance upon the within described property, this company shall not be liable under this policy for a greater portion of any loss sustained than the sum hereby insured bears to the whole amount of insurance on said property issued to or held by either party or parties having an insurable interest therein whether as owner, mortgagee, or otherwise. The foregoing provisions and agreement shall take precedence over any provisions or conditions conflicting therewith contained in said policy. This clause is attached to and made a part of said policy from the seventh day of July, 1890.

"In witness whereof, the duly authorized agent of said insurance company has hereunto set his hand on said day.

"J. J. HIBLER, Agent."

ELLISON, J.—On July 7, 1890, Nellie Neal gave to plaintiff a trust deed to secure the payment of two promissory notes, one for $1,000 and the other for $300, the latter being due July 1, 1891. On the day of executing this deed of trust, Nellie Neal procured from this defendant a policy of insurance, insuring the dwelling house on the lot described in the deed of trust. The policy contained a provision, requiring that, in case of loss, "the insured" should give immediate notice and within thirty days should render a statement, etc., to the defendant, sworn to by the "insured." The policy contained the further provision that the loss should not become payable until sixty days after notice and satisfactory proofs of loss had been received by defendant. And that no action should be sustainable, unless the "assured" complies with these requirements. On the day of issuing the policy, there was attached thereto what is known as a mortgage clause, which is set out elsewhere. No proofs of loss were made, nor was there any waiver of proofs. No proofs were made by Nellie Neal, presumably, from the fact that she had sold the property to another and the defendant had refused to accept of or permit a transfer of the risk to the purchaser, and canceled the policy as to Nellie Neal. No proofs were made by this plaintiff for the reason that, according to the contention here, none were required of plaintiff to entitle it to recover on the policy. In other words, that the provisions as to notice and proofs of loss did not apply to plaintiff, as mortgagee, under the terms of the mortgage clause aforesaid.

The correctness of plaintiff's contention is the question for decision. In the first place, it should be noted that a policy issued to a mortgagor, having attached thereto a detailed and specific contract (sometimes called a long form mortgage clause) with the

mortgagee, has the effect of constituting, and, in fact, is, two insurances, founded on separate and distinct contracts—one with the owner or mortgagor, and the other with the mortgagee. *Hastings v. Ins. Co.*, 73 N. Y. 141. As to the mortgagor, the policy should be read without the mortgage clause. As to the mortgagee, it is to be read as affected by that clause. *Hartford Ins. Co. v. Olcutt*, 97 Ill. 439, 456. This is, in effect, what is stated in the mortgage clause, wherein it is written, "that this insurance as to the interest of the mortgagee," shall not be invalidated, etc. This is no less than if the statement had been, "this insurance of the interest *of* the mortgagee." Some of the provisions of the whole contract may apply to both the owner and the mortgagee. But this does not prevent each from being insured by separate contracts, or, as it may be stated, by a contract which applies to each separately.

The statement running through plaintiff's brief is, that the mortgage clause constitutes the contract with the mortgagee; whereas, it is the *policy*, as affected by that clause, which makes the contract. *Hartford Ins. Co. v. Olcutt, supra.*

Now it is provided in the policy that the "insured" shall make proofs of loss. Who is the insured, under a contract of the character here involved? It is necessary to plaintiff's standing in court that it, as mortgagee, should be regarded as the insured. For it is not claiming a recovery here by any derivative right, or through any right of the mortgagor, but through an independent contract between it and the defendant. It could not be otherwise, for, as to the owner or mortgagor, the policy had been canceled before the loss. But while plaintiff's case concedes that it is insured to the amount of its interest in the property, the claim is that it is not "*the* insured," mentioned in the policy,

and that the policy stands, so far as plaintiff, as mort-. gagee, is concerned, as though it did not contain a provision as to proofs of loss. We are of the opinion that this is not a practicable or reasonable view to take of the contract. The contract contemplates that the mortgagee may become the only party interested in . the insurance, and that happens to be the fact in this case. It contemplates that it may, for various reasons, become void as to the owner, or be canceled as to him, and left standing only as to the mortgagee, as the sole party in interest. Is it reasonable under such circumstances to suppose that the insurer should, without any apparent cause, relieve the mortgagee from the performance of all those protective clauses in insurance policies, which are vitally essential to the business of insurance? A mortgagee might be in possession of the property when it was lost. Could he, in such instance, refuse to produce the books and papers pertaining to the loss, or refuse to submit to an examination under oath, as to the loss, how it occurred, etc., under the plea that he was not the insured referred to in the policy containing such provisions?

But it is insisted that the mortgage clause itself relieves the plaintiff, as mortgagee, from furnishing proofs of loss, in that it provides that the mortgagee's insurance "shall not be invalidated by any act or neglect of the mortgagor or owner of the property insured." This clause does not furnish any real aid to the solution of the question, for it, manifestly, does not relieve the mortgagee of any duty which may devolve upon *him*, nor does it enumerate what his duties are. It merely relieves him from injury by the act or neglect of the owner. If it is the duty of the mortgagee to make proofs of loss, the clause quoted can have no application. And so the same may be said of that

part of the clause giving the right of subrogation to the insurer, in case he pays to the mortgagee under circumstances where he would not be liable to the owner. The following sentence, at the close of mortgage clause, we think gives clear evidence that the parties intended that the conditions of the policy as to proof of loss should apply to the plaintiff, viz.: "The foregoing provisions and agreement shall take precedence over any provisions or conditions *conflicting therewith* contained in said policy." That is to say, all conditions of the policy, applicable, not in conflict with the mortgage clause, should attach to the mortgagee. It appears to us to be clear that the condition of the policy requiring proofs of loss is not in conflict with the mortgage clause. It is, however, freely conceded that there may be numerous provisions in a policy, which are necessarily only intended to apply to the owner, and that provisions may shift in their application as circumstances affecting the parties may transpire.

It has been decided, as before stated, that a policy with a clause attached, such as appears in this case, constitutes two separate and independent insurances; and that whatever obligations rest upon the owner and mortgagee, as to the insurance company, rest upon them separately. But in the cases from Illinois and New York, above cited, it was not determined what those obligations or conditions were. In another case arising in New York, the owner was an infant of tender years, and the guardian, upon a loss, refused to make proofs. The mortgagee by bill in equity sought to compel the guardian to make proofs, alleging that unless he did, he, the mortgagee, would lose his security. The relief was denied on the ground that the guardian or the owner were neither under any legal obligation to make proofs for the benefit of the mortgagee. *Graham v. Phœnix Ins. Co.*, 12 Hun, 446;

affirmed by court of appeals in 77 N. Y. 171. The court of appeals stated, in the course of its opinion: "It may be very embarrassing, or difficult, or perhaps impossible, for plaintiff to furnish the proofs and comply with the condition in his policy. But that is a dilemma in which he has voluntarily placed himself, and he can not compel one to relieve him therefrom who is under no legal obligation to do so." We understand this to indicate that it was the duty of the mortgagee to furnish the proofs, even though it was difficult to do. And that if he could not, the loss would fall on him.

That same mortgagee was in a like manner interested in two other policies from another insurance company, on the same property. Under one of the latter policies, he made proofs of loss, and it was held proper for him to do so; and that, no proof having been made by the owner, *he could not have recovered had he not done so.  Graham v. Firemen's Ins. Co.*, 8 Daly, 421.

Our conclusion is that under the contract it was the duty of plaintiff to see that proofs of loss were made. If made by the owner, they probably would necessarily have covered the condition as applicable to the plaintiff, but not having been made by the owner no recovery can be had.

Since the foregoing was written, our attention has been called to the case of the *Southern Home v. B. & L. Ins. Co.*, lately decided by the supreme court of Georgia, wherein our opinion finds direct support.

2. Plaintiff's further contention is that no proofs of loss were required by the terms of the policy from anyone within a given time. We think this is not the proper construction of the terms of the policy.

The judgment must be reversed. All concur.