the arbitrators on February 9th in any way indicate that it was solely for the purpose of announcing their decision, which was then to be put in legal form by their attorney.

The notice of revocation given by Gitt was proper in form, and, having been served before the time fixed for the meeting on February 9th, under section 2383 of the Code of Civil Procedure, was effective, if the allegations and proofs of the parties had not been closed, and if the matter had not been finally submitted to the arbitrators for their decision. The conclusion is irresistible that neither the parties nor the arbitrators deemed the allegations and proofs closed or the matter finally submitted for their decision on January 27th, or at any time before the notice of revocation was served.

The judgment appealed from must therefore be reversed, with costs to the appellant, and the motion for an order confirming the award of the arbitrators denied, with $10 costs. All concur.

---

HEILBRUN v. GERMAN ALLIANCE INS. CO. OF NEW YORK.

(Supreme Court, Appellate Division, First Department. November 4, 1910.)

1. INSURANCE (§ 646*)—ACTIONS ON FIRE POLICIES—PRESUMPTIONS.
    Where the complaint, in an action on a fire policy brought by the assignee of the mortgagee of the property insured, does not set forth either the policy or the mortgage clause in its precise words, the court must assume that the policy was in the standard form, which alone can be lawfully issued in the state.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1645; Dec. Dig. § 646.*]

2. INSURANCE (§ 156*)—FIRE INSURANCE—MORTGAGE CLAUSE—CONSTRUCTION.
    The mortgage clause in the standard fire policy, providing that the insurance as to the interest of the mortgagee shall not be invalidated by any act or neglect of the owner of the property covered by the policy, creates a new and distinct contract, which places the mortgagee on a different footing from that of a mere assignee or appointee to receive the loss, and the contracts with the owner and the mortgagee are separate, in which each is subject only to the obligations expressly imposed on him.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 316–322; Dec. Dig. § 156.*]

3. INSURANCE (§ 533*)—FIRE INSURANCE—MORTGAGE CLAUSE—CONSTRUCTION.
    The mortgage clause in the standard fire policy, providing that the insurance as to the interest of the mortgagee shall be subject to the conditions "hereinbefore contained," etc., inserted after stipulations referring to acts done by insured prior to the issuance of the policy and to contingencies under which insurer will be relieved from liability, and before provisions referring wholly to conditions to be complied with by insured after a loss, by requiring insured to give notice and proofs of loss, does not require a mortgagee to furnish proof of loss, or to give any other notice than that involved in the commencement of his action on the policy for a loss.

    [Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1320; Dec. Dig. § 533.*]

    Laughlin, J., dissenting.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Appeal from Special Term, New York County.

Action by Simon Heilbrun against the German Alliance Insurance Company of New York. From an order sustaining a demurrer to the complaint, plaintiff appeals. Reversed, and demurrer overruled, with leave to answer.

Argued before INGRAHAM, P. J., and LAUGHLIN, CLARKE, McLAUGHLIN, and SCOTT, JJ.

Jacob R. Schiff, for appellant.
C. Arthur Levy, for respondent.

SCOTT, J. The action is upon a policy of fire insurance issued by defendant to one Cecelia M. Siff, to cover loss by fire to a specified building. The plaintiff's assignor held a mortgage upon the insured building, and there was attached to the policy a mortgage clause which, as the demurrer admits, provided that the loss or damage, if any, to the premises insured, should be payable to Henry Gerken, mortgagee, as interest might appear, and further provided that the insurance, as to the interest of the said mortgagee therein, should not be invalidated by any act or neglect of the mortgagor or owner of the property described therein, nor by any change in the title or ownership of the property. The complaint alleges the fire on the premises, the amount of loss resulting therefrom, the other insurances on the property, and the proportion of the loss which defendant is liable for under its said policy. The complaint does not allege that the insured, or Gerken, the mortgagee, or plaintiff, as assignee of the latter, had ever served notice of loss or proofs of loss upon defendant, and the demurrer for general insufficiency is directed especially to this omission.

The decision below rested upon the proposition that the plaintiff's assignor, although only a mortgagee, was bound, as a condition precedent to a recovery, to allege and prove that he, or the mortgagor, had within the time prescribed by the policy, given to the defendant notice of the loss and furnished proofs of loss. Whether or not such an obligation rested upon the mortgagee is the crucial question involved in this appeal. The question has never been directly passed upon in this state, and in other jurisdictions there are decisions both ways. That no such obligation rests upon a mortgagee has been held in Northern Association Company v. Chicago Mutual Bldg. & Loan Ass'n, 98 Ill. App. 152, affirmed 198 Ill. 474, 64 N. E. 979; Queens Ins. Co. v. Dearborn Savings Loan & Bldg. Ass'n, 75 Ill. App. 371, affirmed 175 Ill. 115, 51 N. E. 717; Dwelling House Ins. Co. v. Kansas Loan, etc., Co., 5 Kan. App. 137, 48 Pac. 891; Glens Falls Ins. Co. v. Porter, 44 Fla. 568, 33 South. 473; Adams v. Farmers' Mut. Ins. Co., 115 Mo. App. 21, 90 S. W. 747. On the other hand, it has been held that a mortgagee must furnish proofs of loss in Lombard Invest. Co. v. Dwelling House Ins. Co., 62 Mo. App. 315, apparently overruled by Adams v. Farmers' Mut. Fire Ins. Co., supra; Southern Home Bldg. & Loan Ass'n v. Home Ins. Co. of New Orleans, 94 Ga. 167, 21 S. E. 375, 27 L. R. A. 844, 47 Am. St. Rep. 147; American, etc., Ass'n v. Farmers' Ins. Co., 11 Wash. 619, 40 Pac. 125. To the

same effect is Union Inst. for Savings v. Phœnix Ins. Co., 196 Mass. 230, 81 N. E. 994, 14 L. R. A. (N. S.) 459, although the precise point was not involved. In that case neither the policy nor the mortgagee clause seems to have been the same as those in use in this state, and the case turned rather on the *right* of a mortgagee to make proofs of loss, than upon his *obligation* so to do, although the opinion upholds both the right and the obligation.

In the present case the complaint does not undertake to set forth either the insurance policy or the mortgagee clause in their precise words. We must assume, therefore, that the policy was in the standard form, which alone can be lawfully issued in this state (Hicks v. Insurance Co., 162 N. Y. 284, 56 N. E. 743, 48 L. R. A. 424), and that the mortgagee clause is substantially in the form set forth in the complaint and admitted by the demurrer, to wit, that it provides that the insurance as to the interest of the said mortgagee therein shall not be invalidated by any act or neglect of the mortgagor or owner of the property described therein. The effect of such a clause has long been settled in this state. It created a new and distinct contract, which places the mortgagee upon another and a different footing from that of a mere assignee or appointee to receive the loss, and removes him beyond the control or effect of any act or neglect of the owner of the property, and renders such mortgagee a party who has a distinct interest separate from the owner, embraced in another and a separate contract. The interest of the owner and of the mortgagee are regarded as distinct subjects of insurance. As was said by Rapello, J.:

"I think that the intent of the clause was to make the policy operate as an insurance of the mortgagors and the mortgagees separately, and to give the mortgagees the same benefit as if they had taken out a separate policy, free from the conditions imposed upon the owners, making the mortgagees responsible only for their own acts." Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141.

Considering the contracts with the owner and the mortgagee as separate contracts, in which each is subject only to the obligation expressly imposed upon him, we must next turn to the standard form of fire insurance policy to ascertain what those obligations are. That form of policy was devised with the greatest care, and constitutes the only lawful form of policy which may be issued in this state. Its conditions are plainly expressed in numbered lines. Lines 56 to 59, inclusive, state distinctly what conditions and obligations apply to and rest upon a mortgagee, as follows:

"If, with the consent of the company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as expressed herein, the conditions *hereinbefore* contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

The use of the word "hereinbefore" in the above clause is most significant, and when we come to consider the nature of the conditions which precede the clause, and those which follow after it, the significance of its language and its location in the policy becomes absolutely controlling. Lines 7 to 55, preceding the mortgagee clause,

refer to acts done by the insured prior to the issuance of the policy, or to certain contingencies under which the insurer will be liable to no one, as, for instance, if a loss occurs by reason of invasion, insurrection, riot, etc. Lines 60 to 112, on the other hand, which follow after the above-quoted mortgagee clause, refer wholly to conditions to be complied with by the insured after a loss has occurred. Many of these obligations thus imposed upon the owner relate to matters concerning which a mortgagee is not to be presumed to have knowledge, or with which, in the nature of the case, he could not comply. Throughout the policy it is quite apparent that the "insured," who is required to do certain things after a loss has occurred, does not include a mortgagee. The obligation imposed upon the insured by lines 60 to 112 of this policy is therefore by the very terms of the policy imposed upon the original insured person, and not upon the mortgagee. This includes the giving of immediate notice of the loss, of which the mortgagee may be ignorant for a long time, and the furnishing of proofs of loss, which the mortgagee may be quite unable to do, and by the neglect of the owner or mortgagee to do which it is expressly provided that the insurance as to the interest of the mortgagee shall not be invalidated.

We are therefore of the opinion that the mortgagee was under no obligation to furnish proof of loss, or to give any other or earlier notice of loss, than that involved in the commencement of this action. It was not, therefore, necessary to allege that he, or the mortgagors, had given such proofs of loss, or to set up an express waiver thereof by the insurer.

It follows that the order appealed from must be reversed, with $10 costs and disbursements, and the demurrer overruled, with $10 costs, with leave to defendant to withdraw the demurrer and answer within 20 days, upon payment of such costs.

INGRAHAM, P. J., and McLAUGHLIN and CLARKE, JJ., concur.

LAUGHLIN, J. (dissenting). The provisions of the policy are not fully set forth; but since the Legislature had prescribed a form of policy, to be known and designated as "the standard fire insurance policy of the state of New York," and had prohibited the use of any other, it may be assumed that the policy conformed to the requirements of the statute, and we may take judicial notice of its provisions. Chapter 488, Laws 1886; section 121, Insurance Law, being chapter 28 of Consolidated Laws; Hicks v. Insurance Co., 162 N. Y. 284, 56 N. E. 743, 48 L. R. A. 424; Dickinson v. Oliver, 195 N. Y. 238–243, 88 N. E. 44.

I am of opinion that the standard mortgagee clause under the New York standard policy of fire insurance does not relieve the mortgagee from giving notice of the fire, and furnishing proofs of loss to the insurance company, and affording it the benefit of the arbitration provision with respect to the amount of the loss and of the short statute of limitations of one year prescribed in the contract for bringing the

action to recover the loss. Lines 56 to 59, inclusive, of the policy, provide as follows: .

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached, or appended hereto."

I do not agree with the construction that these provisions of the policy show a legislative intent or an intent on the part of the author that none of the subsequent provisions were to be applicable to the mortgagee. The preceding provisions, so far as they relate to *acts* of the owner, relate to matters and things existing, occurring, or that might occur, before the fire, with the exception of filing false proofs of loss by him and his participation in estimating the damages; while all of the succeeding provisions relate to matters and things occurring, or required to be done, after the fire. By the lines quoted, which were evidently drafted before the clauses to be attached were prepared, it is plainly provided that the application of the preceding provisions to the mortgagee might be limited and defined by a slip or rider or indorsement on the policy, and as thus contemplated, and pursuant to the statutes cited, three mortgagee clauses were prepared. One of the forms relates to policies in which the owner has no interest. The other two relate to policies requiring payment to the mortgagee "as interest may appear," and are alike, with the exception that one limits the liability to a proportionate part of the loss in case of other insurance. The other form, with this clause omitted, is as follows:

"Loss or damage, if any, under this policy, shall be payable to ...... as ...... mortgagee (or trustee), as interest may appear, and this insurance, as to the interest of the mortgagee (or trustee) only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee (or trustee) shall, on demand, pay the same.

"Provided, also that the mortgagee (or trustee) shall notify this company of any change of ownership or occupancy or increase of hazard which shall come to the knowledge of said mortgagee (or trustee), and unless permitted by this policy, it shall be noted thereon and the mortgagee (or trustee) shall on demand, pay the premium for such increased hazard for the term of the use thereof; otherwise this policy shall be null and void.

"This company reserves the right to cancel this policy at any time as provided by its terms, but in such case this policy shall continue in force for the benefit only of the mortgagee (or trustee) for ten days after notice to the mortgagee (or trustee) of such cancellation and shall then cease and this company shall have the right, on like notice, to cancel this agreement.

"Whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all

such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of ...... claim.
"Dated, ............
"Attached to and forming part of Policy No. ......
"............ (Signature for Company.)"

The object of the provision to the effect that the policy should not be invalidated by acts or neglect of the mortgagor or owner was, I think, to protect the mortgagee against acts and omissions of the mortgagor or owner, or others, which would invalidate the policy or prevent a recovery by the mortgagor or owner, but over which the mortgagee would have no control, and concerning which he would have no opportunity of acquiring knowledge, as, for instance, taking out other insurance, or transferring the property, or assigning an interest therein, or leaving the same vacant, or the commencement of an action to foreclose another mortgage. Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141; Cole v. Germania Fire Ins. Co., 99 N. Y. 36, 1 N. E. 38. The inference from the lines quoted from the standard policy is, I think, that the succeeding provisions were all to remain in force without any modification as part of the contract of insurance between the company and the mortgagee, so far as apparently applicable. If this be not so, then the mortgagee may commence an action to recover his loss at any time within six years after the fire or within six years and sixty days after "due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by" the company; the loss not being payable until such 60 days (Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141), without giving notice of the fire to the company, or presenting proofs of loss, or affording the company an opportunity to arbitrate, and without being affected by the short statute of limitations of one year therein prescribed, all of which would be applicable to a claim made by the owner.

I concede that the attachment of the mortgagee clause by the insurance company at the request of the owner or mortgagee gives rise to a separate contract of insurance between the mortgagee and the company (Hastings v. Westchester Fire Ins. Co., 73 N. Y. 141; Eddy v. London Assurance Corporation, 143 N. Y. 311, 38 N. E. 307, 25 L. R. A. 686); but I am of opinion that it is not fully expressed in the mortgagee clause alone, or in the provisions of the policy preceding line 59 expressly referred to therein. The insurance company was not obliged to insure the mortgagee, and I regard it as an unreasonable construction of the contract to hold that by consenting to do so it is deemed to have intended to exclude all provisions with respect to notice of the fire, proofs of loss, arbitration, and the short statute of limitations. This insurance company did not prepare the standard policy or the mortgagee clauses, and there is no evidence that it participated therein. The statutes cited contemplated that they should be prepared by the Board of Fire Underwriters or by the Superintendent of Insurance. But whether provisions of the policy, the meaning of which is not clear, are to be construed favorably to the insured, as if they were drafted by the insurance company, for which there appears to be authority (Matthews v. Am. Central Ins. Co., 154 N. Y. 449–456, 48 N. E. 751, 39 L. R. A. 433, 61 Am. St. Rep. 627; Waldradt v. P.

Ins. Co., 136 N. Y. 375, 32 N. E. 1063, 32 Am. St. Rep. 752), or like a statute, on the theory that they were forced upon the insurance companies, for which there is also authority (Kerr on Ins. § 70; Hamilton v. Royal Ins. Co., 156 N. Y. 327–336, 50 N. E. 863, 42 L. R. A. 485; see, also, Hicks v. British Am. Assurance Co., 162 N. Y. 284–294, 56 N. E. 743, 48 L. R. A. 424), is not very important as I view the case.

The action, whether by mortgagee or owner, and even though no policy had been issued, is based upon, and can only be maintained according to, the conditions of the standard policy. Hicks v. British Am. Ins. Co., supra. It is, therefore, an action on the policy. Starting with the mortgagee clause, to ascertain what provisions of the policy must be taken with it to constitute a complete contract, I find no escape from the conclusion that lines 106 and 107 apply. They are as follows:

"No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

It will be observed that these provisions lastly quoted are not limited to an action by the *insured,* but extend to *every* action on the policy to recover *any* claim. If this be, as I think it is, an action on the policy, then not only must it be commenced within the period limited therefor, but it cannot be maintained until the insured has complied with the other requirements of the policy not expressly waived or modified by the mortgagee clause, or, in the event of his refusal or default, until substantial compliance by the mortgagee. Southern Home Bldg. & Loan Ass'n v. Home Ins. Co., 94 Ga. 167, 21 S. E. 375, 27 L. R. A. 844, 47 Am. St. Rep. 147; Am. Bldg. & Loan Ass'n v. Farmers' Ins. Co., 11 Wash. 619, 40 Pac. 125. In the case last cited an instructive opinion on this point was delivered. The court, in deciding whether the contract with the mortgagee was manifested exclusively by the mortgagee clause, said, among other things:

"But we think, also, that all of the provisions of the policy continued in force, excepting only such as are inconsistent with the provisions contained in the clause annexed; in other words, that the annexation of the mortgagee clause operates merely as a modification of the policy, by dispensing with certain requirements, duties, and obligations which, by the terms of the policy, were imposed upon the owner, and protects the mortgagee against his (the mortgagor's) acts either of omission or commission, but that general provisions of the policy, intended for the security and protection of the company, and which do not relate personally to the mortgagor, such as the stipulation concerning the time in which an action shall be brought, are not abrogated or affected by it. The mortgagee clause is not a complete contract in itself, nor does it profess to be. It is, of course, conclusive upon the parties in so far as it speaks, and controls any provisions of the policy to which it is attached which are inconsistent with it; but, as a complete or entire contract, it is indefinite and uncertain. Resort must still be had to the terms of the policy to ascertain many things which are the very life of the contract; among others, the amount of the insurance, the property insured, the terms of the insurance, and very many matters concerning which the indorsement itself furnishes absolutely no information whatever. The suit is based, not upon the indorsement as a complete contract, but upon the policy, of which it is simply a part. It is the policy which constitutes the basis of plaintiff's right to a recovery, and it plainly and unmistakably says that 'no suit or action for the

recovery of any claim by virtue of this policy shall be sustainable in any court, * * * unless such suit or action shall be commenced within twelve months next after the date of the fire from which such loss shall occur.'"

If, as has been held by the General Term, the mortgagee becomes, to the extent of his interest, the *insured,* within the meaning of that term as used in the policy (Armstrong v. Agricultural Ins. Co., 56 Hun, 399, 9 N. Y. Supp. 873, reversed on another point 130 N. Y. 560, 29 N. E. 991, wherein it appears to have been assumed that the company was entitled to proofs of loss either by the owner or mortgagee), then it is manifest that the provisions requiring the insured to give notice of the fire, to file proofs of loss, and to arbitrate the damages, if unable to agree thereon, are applicable, and that the action cannot be maintained. If, however, the mortgagee be not the *insured* still it is, I think, incumbent on him to show that the *insured* has performed his obligations accruing subsequent to the loss, or, in default thereof, that the mortgagee has performed them as to that part of the loss payable to the mortgagee to the best of his ability, and if not within the time limited for performance by the *insured,* upon whom in that construction of the policy the duty would rest in the first instance, then within a reasonable time after acquiring knowledge or notice of the fire and of default on the part of the insured. Union Inst. for Savings v. Phoenix Ins. Co., 196 Mass. 230, 81 N. E. 994, 14 L. R. A. (N. S.) 459; Moore v. Hanover Ins. Co., 71 Hun, 199, 24 N. Y. Supp. 507, reversed on another point 141 N. Y. 219, 36 N. E. 191. See, also, Matthews v. Am. Central Ins. Co., supra.

The court is not on this appeal required to decide whether the mortgagee becomes the *insured* as to his interest, or whether, not being the *insured,* his right to recover depends upon compliance by the insured or on his own part with one or more of the provisions with respect to notice of the fire, proofs of loss, and arbitration as to damages; for if, in either aspect of the case, *some* notice of the fire, or proof of loss, or opportunity to arbitrate was required, then the judgment in favor of the defendant cannot be disturbed. That these provisions constitute an essential part of any contract of insurance based on the policy is evident, I think, on reading the policy. At the very outset, in the first sentence, which embraces the first six lines, it is provided that the liability of the company shall be limited to the cash value or what it would cost to repair or replace the property, and that it shall have the option to take damaged property at its appraised value, and repair, rebuild, or replace the property damaged or destroyed. Is it reasonable to construe the contract between the mortgagee and the company as excluding these provisions? The mortgaged interest may be more than the total loss. If these provisions are eliminated, of what use, in such event, are they to the company? If it be not liable to the owner, it might under the subrogation clause have a right of action against him for reimbursement; but of what avail, in that event, are these provisions with respect to repairing, restoring, or rebuilding?

That the agreement with the mortgagee is subject to such provisions has long been the settled law of this jurisdiction. Heilmann v. West-

chester Fire Ins. Co., 75 N. Y. 7. See, also, Wynkoop v. Niagara Fire Ins. Co., 91 N. Y. 478, 43 Am. Rep. 686. In the same sentence we find a provision for arbitrating the loss in the event that the insured and the company are unable to agree thereon. Can there be any doubt that if they do agree, or if the damages be arbitrated according to the contract, the loss agreed upon or determined by the arbitration, in the absence of bad faith or fraud, will be binding on the mortgagee? It is then provided in the same sentence as follows:

"And, the amount of loss or damage having been thus determined, the sum for which this company is liable pursuant to this policy shall be payable sixty days after due notice, ascertainment, estimate, and satisfactory proof of the loss have been received by the company in accordance with the terms of this policy."

Whether the policy be construed as a form of contract prescribed by the Legislature, so that the legislative intent governs, or as recommended or prepared by those representing the interests of insurance companies, I think it is not reasonable to infer that it was intended as between the mortgagee and the company to exclude all of these conditions, upon which liability of the company to pay the loss in money depends. In my opinion, the only theory on which the liability of the company to the mortgagee without substantial compliance with these conditions precedent could be sustained is that the mortgagee clause alone constitutes the contract, and that not only are all provisions succeeding lines 56 and 59 excluded, but also all preceding provisions that are not expressly continued by the mortgagee clause. Such a contention would be untenable. None of the provisions of the first six lines, which I have discussed and considered, are expressly continued by the mortgagee clause. Moreover, it is expressly provided in lines 31 to 35, inclusive, that the company shall not be liable for loss caused directly or indirectly—

"by invasion, insurrection, riot, civil war or commotion, or military or usurped power, or by order of any civil authority, * * * or * * * by explosion of any kind, or lightning; but liability for direct damage by lightning may be assumed by specific agreement hereon."

None of these provisions are expressly continued by the mortgagee clause; but could it be successfully, or even seriously, maintained that these provisions do not form part of the contract between the mortgagee and the insurance company? Is it reasonable to suppose that liability to mortgagees was imposed upon the insurance companies by the Legislature, or voluntarily assumed by them, for a loss arising from a cause expressly excluded from the risks assumed? It is also significant that these provisions are not expressly limited to liability to the owner, but are general, and relate to all liability under the policy. Likewise lines 36 and 37 provide:

"If a building or any part thereof fall, except as the result of fire, all insurance by this policy on such building or its contents shall immediately cease."

These provisions are not expressly continued by the mortgagee clause; but, for the reasons already assigned, I think that they consti-

tute part of the contract with the mortgagee. There are other provisions, preceding line 59, to which the same argument applies. Provisions rendering the policy void for misrepresentations on the part of the owner with respect to his interest in the property invalidates it also as to a mortgagee under the standard policy and mortgagee clause. Genesee Falls Ass'n v. U. S. Fire Ins. Co., 16 App. Div. 587, 44 N. Y. Supp. 979. See, also, Graham v. Germanic Ins. Co., 87 N. Y. 69, 41 Am. Rep. 348. Now, if I have succeeded in demonstrating that the provisions of the policy preceding line 59, which are neither expressly modified nor continued in force by the mortgagee clause, constitute, so far as applicable, part of the contract of insurance with the mortgagee, then it follows, logically, I think, that the provisions with respect to notice of the fire, proof of loss, and arbitration likewise become part of that contract; for, although the specific requirement with respect to these things is contained in lines succeeding line 59, yet there are, as has been seen, in the first sentence of the policy, general provisions with respect thereto which in reality make them part of the very first provisions of the contract.

The provisions with respect to notice of the fire, proof of loss, arbitration as to the damages, and fixing a short statute of limitations —of course, the question as to the statute of limitations is not presented by the demurrer—may fairly be said to be applicable to any claim made against the company under the policy; and, without expressing an opinion as to whether the mortgagee is an insured within the contemplation of the contract, I am decidedly of opinion that the action cannot be maintained without alleging compliance by the owner with the requirements of the policy with respect to giving notice of the fire, filing proofs of loss, and affording the company an opportunity to arbitrate the loss, or, in default of compliance by the owner, such compliance in those respects on the part of the mortgagee as could be made in the exercise of due diligence and reasonable care. I am of opinion that the decision of the Court of Appeals in Eddy v. London Assurance Corporation, supra, tends to sustain these views. There Judge Peckham, writing for the court, in deciding that the contract with the mortgagee is separate, said:

"By taking the insurance in the manner the mortgagee herein did, instead of taking out a separate policy, all the provisions in the policy, which from their nature would properly apply to the case of an insurance of the mortgagee's interest, would be regarded as forming part of the contract with him, while those provisions which antagonize or impair the force of the particular and specific provisions contained in the clause providing for the insurance of the mortgagee must be regarded as ineffective and inapplicable to the case of the mortgagee."

The views expressed by the Court of Appeals in Hicks v. British Am. Ass'n Co., supra, tend also to uphold the contention made in behalf of the insurance company. In that case Chief Judge Parker, writing for the court, pointed out that the purpose of requiring proofs of loss was to prevent the perpetration of fraud on the insurance companies. It scarcely needs reflection to realize that if a mortgagee may recover six years or more after the loss, without notice of the fire, proof of loss, or opportunity for arbitration, the door will be opened

wide, not only to fraudulent claims upon which the companies will be victimized, for they will be helpless in many instances to defend themselves against dishonest claims, but also to collusion between owners and mortgagees.

I therefore vote for affirmance.