### WHALEN et al. v. WESTERN ASSUR. CO. OF TORONTO.

(Circuit Court of Appeals, Second Circuit. February 14, 1911.)

#### No. 162.

**1. INSURANCE (§ 535*)—MARINE INSURANCE—NOTICE OF LOSS—NECESSITY.**

A provision of an insurance policy on a vessel that, in case of any loss or misfortune to the vessel, prompt notice of the disaster should be given to the insurer, and that a failure to give such notice should relieve it from liability therefor, is valid and enforceable, and it is immaterial whether or not such notice would have been of benefit to the insurer.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1322; Dec. Dig. § 535.*]

**2. INSURANCE (§ 539*)—MARINE INSURANCE—NOTICE OF LOSS—"PROMPT NOTICE."**

A policy of insurance on a canal boat provided that, "in case of any loss or misfortune" to the vessel, "prompt notice of the disaster" should be given to the insured, and that a failure to give such notice should relieve it from any liability therefor. *Held,* that notice given nearly a month after the boat sank was not "prompt" within such requirement and avoided the policy; no reason appearing why the owner could not have given such notice at once.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1328–1336; Dec. Dig. § 539.*

For other definitions, see Words and Phrases, vol. 6, p. 5683; vol. 8, p. 7767.]

Appeal from the District Court of the United States for the Eastern District of New York.

Suit in admiralty by Andrew Whalen and Orsen W. Sheldon against the Western Assurance Company of Toronto. Decree for libelants, and defendant appeals. Reversed.

This cause comes here upon appeal from a decree of the District Court, Eastern District of New York, holding respondent liable as insurer for the alleged total loss of the canal boat W. J. Eaton. The suit was brought upon a canal-hull policy issued July 15, 1907, by respondent through its agent at Whitehall, N. Y., covering the Eaton against marine perils and fires and containing the usual sue and labor clause, with provision for survey, warranty of seaworthiness, and provision against abandonment except in case of actual total loss.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Carpenter & Park (J. E. Carpenter, of counsel), for appellant.
Hyland & Zabriskie (Nelson Zabriskie, of counsel), for appellees.
Before LACOMBE, WARD, and NOYES, Circuit Judges.

LACOMBE, Circuit Judge. The sole defense relied upon here is based on the following clause of the policy:

"And in case of any loss or misfortune it shall be lawful and necessary to and for the assured, his or their agents, factors, servants and assigns, to give to the assurers prompt notice of the disaster, and a failure to do so will render der the assurers free from any liability for loss or damage under this policy."

The facts relevant to this defense are as follows: Whalen, the owner of the boat, lived at Whitehall. At the close of the season of 1907, about the middle of November, he laid her up in a cove near Burlington on Lake Champlain, where other boats were laid up, all under the charge of a ship carpenter named Pashby who lived in the vicinity. During the winter, as the temperature changed, the cove froze over or thawed out. There is testimony that as late as March 19, 1908, the boat was apparently in good condition, but soon after she began to leak, and, although Pashby and others worked the pump on her, the water kept gaining, and he saw that he could not keep her up, whereupon he wrote to Whalen that the boat was sinking. Pashby says that Whalen replied that it was impossible for him to come, and to do the best he could. He could accomplish nothing, and three or four days later she sank. This date is fixed as March 29th. Other letters were written to Whalen after she sank. On April 7th or 8th he arrived at the cove and saw the Eaton. He procured men, hand pumps, and ropes, began pumping about the 14th or 15th, and worked for several days trying to raise her, but without success. Towards the end of April he abandoned these efforts and secured another boat in the cove which he pumped out and took to Benson, a place about 10 miles north of Whitehall, where he loaded her with lumber for New York; finished loading about the 1st of May, and reached Whitehall from Benson pretty close to the first boat on the opening of navigation, 9th or 10th of May. Until he had brought this other boat down to Benson, he had sent no word of what had happened to Bascom or to any one else representing the company. There is a controversy as to the date when he did inform Bascom of the situation. Libelant in one place says it was about April 27th. Elsewhere he gives it as six or seven or eight days before he arrived at Whitehall with his boat, which would make it some time between the 1st and 3d of May. Bascom testified that the interview did not take place until some time between May 15th and 22d. We are inclined to think the latter statement is more accurate. Libelant seems to be quite uncertain as to all the dates he gives; but it is unnecessary to decide which witness is right in that particular. Fixing the date most favorably for libelant, three weeks elapsed after he knew the boat had sunk in the ice before he gave notice of the disaster, either by mail, telegraph, telephone, or word of mouth, although Whitehall, where Bascom was located, was but 90 miles away, easily reached by mail or telegraph.

The two men do not agree as to details of the conversation between them when libelant informed Bascom that the boat was sunk and he

had tried unsuccessfully to raise her, but they do agree that the latter said the company was not liable and would not pay the loss.

Libelant contends that because of denial of liability on the part of the company it was not incumbent upon the assured to give the notice required by the clause above quoted. But the case upon which he mainly relies (Knickerbocker Life Ins. Co. v. Pendleton, 112 U. S. 696, 5 Sup. Ct. 314, 28 L. Ed. 866) held merely that denial of liability waives the giving of the formal proof of loss which the policy provided for. The court approved of a charge of the trial judge, which instructed the jury:

"As to the proof of loss not being filed, it is conceded notice of the death was given. If, when that was done, the agents of the company repudiated all liability and informed the parties that the policy had lapsed, then no proof of loss was required by them, and the failure to file it cannot alter the case."

Other cases cited on the brief are to the same effect. In Knickerbocker Life Ins. Co. v. Schneider, 131 U. S. Append. clxxii, 25 L. Ed. 694, the pleadings were found to raise no direct issue upon the fact of notice and proof. But the clause now under consideration does not deal with the proof of loss. Elsewhere in the policy it is provided that losses shall be payable 60 days after proofs of loss or damage shall be presented to the office of the company. The clause above quoted requires prompt notice of any disaster to be given to the assurers, presumably that they may have an opportunity promptly to investigate or to render assistance. It is plainly expressed in unambiguous language, is part of the contract which both sides expressly agreed to, and may not be construed so as to eliminate it upon any speculation as to whether the assurers might have been able to accomplish anything if prompt notice had been given to them.

"Contracts of insurance are contracts of indemnity upon the terms and conditions specified in the policy, embodying the agreement of the parties. If the insured cannot bring himself within the conditions of the policy, he is not entitled to recover for the loss. It is immaterial to consider the reasons for the conditions or provisions on which the contract is made to terminate, or any other provision of the policy which has been accepted and agreed upon. It is enough that the parties have made certain terms, conditions on which the contract shall continue or terminate. The courts may not make a contract for the parties. Their function and duty consists simply in enforcing and carrying out the one actually made." Imperial Ins. Co. v. Coos County, 151 U. S. 452, 14 Sup. Ct. 379, 38 L. Ed. 231.

The only remaining question is whether the notice was given promptly; that is, within a reasonable time and with due diligence under all the circumstances of the case. When libelant was advised by Pashby that his boat was leaking and could not be kept afloat and, a few days later, that she had actually sunk, he was at Whitehall where respondent's agent was located. When he saw with his own eyes that she was sunk in the ice, he was near Burlington. A notice given to the agent in Whitehall three weeks later can hardly be called "prompt." There is no force in the suggestion that he waited in order to find out how great the loss would probably be before sending word to Bascom. The clause is not confined to definitely ascertained loss; it requires that "in case of any loss or misfortune" prompt notice shall be given "of the disaster." Certainly her sinking where she did at that season

of the year was a "misfortune" and a "disaster" the moment it occurred, and the contract expressly stipulated that of such the assured should be promptly notified. There are cases where the circumstances were such as to induce a liberal construction of the word "prompt" or its equivalent; but we find no such circumstances in this case and are referred to no authority which sustains libelant's contention. Referring to those cited on the brief, in Solomon v. Continental Fire Insurance Co., 160 N. Y. 595, 55 N. E. 279, 46 L. R. A. 682, 73 Am. St. Rep. 707, the plaintiff was an assignee of the parties originally insured and obtained neither the policy nor any information that notice of loss was required by its provisions until about 50 days after the fire. The defendant was apprised of the destruction of the building and its contents upon the morning of the fire through a printed notice left with it by the committee of the fire patrol. This notice disclosed that the entire building was destroyed. The first intimation Bascom received that the boat had met with misfortune was when he had his interview with Whalen three weeks or more after the disaster. Cox v. Vermont Central R. R. Co., 170 Mass. 129, 49 N. E. 97, was an action against a common carrier, which had to show that its requirement as to notice was a just and reasonable one. Heilbrunn v. Germania Ins. Co. (First Dept.; October, 1910) 140 App. Div. 557, 125 N. Y. Supp. 374, the action was by an assignee of a mortgagee, and the policy expressly provided that it should not be invalidated by any neglect of the mortgagor. In Bennett v. Lycoming Co. Mutual Ins. Co., 67 N. Y. 274, notice was given to an agent of the insurer a day or so after the fire. Paltrovitch v. P. Ins. Co., 143 N. Y. 73, 37 N. E. 639, 25 L. R. A. 198, deals with proofs of loss, where the technical point was raised that they were not taken before a notary who lived nearest to the premises. In Fisher v. Crescent Ins. Co. (C. C.) 33 Fed. 544, notice was given to local agents the morning after the fire. In Cashau v. N. W. National Ins. Co., 5 Biss. 476, Fed. Cas. No. 2,499, proofs of loss were accepted without objection which was held to be a waiver.

We conclude that libelant has failed to show compliance with an essential condition of the contract and cannot recover thereon.

The decree is reversed, with costs, and cause remanded, with instructions to dismiss the libel, with costs.