Fred C. Eddy, as Receiver, etc., *v.* London Assurance Corporation, Appellant, and Giles Everson, Respondent.

The corporation defendant issued to plaintiff a policy of fire insurance on certain property. Defendant E. held mortgages on the property and was insured as mortgagee in the same policy, as his mortgage interest might appear. The policy contained provisions declaring it void in case the insured, without the consent of the company, procured other insurance or in case he permitted foreclosure proceedings to be commenced. In case of other insurance it was provided that the company should be liable for no greater proportion of the loss than the amount insured by the policy bore to the whole amount of insurance. The policy contained a "mortgage clause" to the effect that the insurance of E.'s interest should not be invalidated by any act or neglect of the mortgagor or owner of the property or by any foreclosure or other proceedings or notice of sale relating to the property; but that in case the company shall pay the mortgagee any loss, and shall claim that as to the mortgagor or owner no liability therefor existed, it, to the extent of such payment, should be subrogated to the rights of the mortgagee, or at its option may pay the mortgage debt and receive an assignment; no subrogation, however, to impair the right of the mortgagee to receive the full amount of his claim. During the term of the policy E. commenced an action to foreclose his mortgages, pending which a fire occurred. Judgment of foreclosure and sale was rendered, under which the property was sold, leaving a deficiency to more than the amount of the insurance. In an action upon the policy the insurance company claimed that E. having by his foreclosure and sale put it out of his power to subrogate could not recover. *Held*, untenable; that while the commencement of the foreclosure suit terminated plaintiff's interest under the policy, the insurance of E.'s interest was separate and distinct, and he took the same benefit as if he had received a separate policy, free from the conditions imposed upon the plaintiff; that E., therefore, violated no contract when he commenced the foreclosure, nor was he bound to stay the proceedings when the fire occurred, accept payment of the amount of insurance, and then assign to the extent of such payment his rights in the mortgages; but that as the subrogation agreement was upon condition that subrogation should not impair the mortgagee's right to recover the full amount of his claims secured by the mortgages, unless full payment was made, he had the right to proceed with the foreclosure and sell the premises.

Plaintiff, without consent of the insurers, obtained other insurance upon the property; this was done without the consent of E., and his interest was not insured. It was claimed by the company that in arriving at

the proportion of the loss to be paid to E. such other insurance should be reckoned as part of the insurance on the property.  *Held,*  untenable.

In other policies the mortgagee clause contained the provision that the insurers would be liable only in proportion to the whole amount of insurance on the property issued to or held by any party having an insurable interest in the property as owner, mortgagee or otherwise. *Held,* that the meaning of this provision, taking into consideration the other provision that the insurance of the mortgagee should not be invalidated by any act or neglect of the owner, was that the insurance which should diminish or impair the right of the mortgagee to recover for his loss must be one issued upon his interest or to which he had consented, and so, his insurance could not be diminished by insurance without his assent or knowledge which did not include his interest.

When a contract contains 'provisions somewhat inconsistent, that construction will be adopted which, while giving some effect to all, will plainly tend to carry out the clear purpose of the agreement.

(Argued June 22, 1894; decided October 9, 1894.)

Appeal from judgment of the General Term of the Supreme Court in the fourth judicial department, entered upon an order made September 13, 1892, which affirmed a judgment in favor of the defendant Giles Everson, entered upon the report of a referee.

This was an action upon a policy issued by defendant December 17, 1887, which insured the building, elevator, etc., of the Syracuse Screw Company against loss and damage by fire for one year. The policy contained, amongst other provisions, the following : " This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void if the insured now has or shall hereafter make or procure any other contract of insurance, whether valid or not, on property covered in whole or in part by this policy  *  *  * or if, with the knowledge of the insured, foreclosure proceedings be commenced or notice given of sale of any property covered by this policy by virtue of any mortgage or trust deed ; or if any change, other than by the death of an insured, take place in the interest, title or possession of the subject of insurance (except change of occupants without increase of hazard), whether by legal process or judgment or by voluntary act of the insured, or otherwise."

" This company shall not be liable under this policy for a greater proportion of any loss on the described property, or for loss by and expense of removal from premises endangered by fire, than the amount hereby insured shall bear to the whole insurance, whether valid or not, by solvent or insolvent insurers, covering such property, and the extent of the application of the insurance under this policy, or of the contribution to be made by this company in case of loss, may be provided for by agreement or condition written hereon or attached or appended hereto."

Attached to the policy was what is known as the New York standard mortgagee clause, containing, among other provisions, the following :

" Loss or damage, if any, under this policy, shall be payable to Giles Everson, as first mortgagee [or trustee], as interest may appear, and this insurance, as to the interest of the mortgagee [or trustee] only therein, shall not be invalidated by any act or neglect of the mortgagor or owner of the within-described property, nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy ; provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee [or trustee] shall, on demand, pay the same."

" Whenever this company shall pay the mortgagee [or trustee] any sum for loss or damage under this policy, and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee [or trustee] the whole principal due to or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities ; but no subrogation shall impair the

right of the mortgagee [or trustee] to recover the full amount of his claim."

The further facts, so far as material, are stated in the opinion.

*A. H. Sawyer* for appellant. The five policies issued upon the Pearl street property became forfeited and void 'as to the plaintiff, prior to the fire, by reason of the procuring of the $2,750 additional insurance upon said property, without notice to or consent of the companies' issuing said policies. (*Allen* v. *G. A. Ins. Co.*, 123 N. Y. 6; *Landers* v. *W. Ins. Co.*, 86 id. 414; *Landers* v. *Cooper*, 115 id. 279; *Bigler* v. *N. Y. C. Ins. Co.*, 22 id. 402; *Gilbert* v. *P. Ins. Co.*, 36 Barb. 372.) All the policies issued by the defendant companies became forfeited and void prior to the fire by reason of the commencement, and the pendency, at the time of the fire, of proceedings for the foreclosure of the mortgages held by the defendant Everson upon the property covered by said policies. (*Titus* v. *G. F. Ins. Co.*, 81 N. Y. 411, 417; *Armstrong* v. *A. Ins. Co.*, 130 id. 560; *Short* v. *H. Ins. Co.*, 90 id. 16.) The defendant insurance companies, upon payment to the defendant Everson of the amount due under their policies of insurance, were entitled to be subrogated, to the extent of such payment, to all the rights of Everson, as mortgagee, under all securities held by him as collateral to the mortgage debt, as such securities existed on the day when the loss occurred. (*S. F. & M. Ins. Co.* v. *Allen*, 43 N. Y. 389; *U. C. S. Inst.* v. *Leake*, 73 id. 161; *Foster* v. *Van Reed*, 70 id. 19; *E. F. Ins. Co.* v. *R. Ins. Co.*, 55 id. 343, 359; *Kip* v. *M. F. Ins. Co.*, 4 Edw. Ch. 86; *C. F. Ins. Co.* v. *E. R. R. Co.*, 73 N. Y. 399; *Dick* v. *F. F. Ins. Co.*, 81 Mo. 103.) The agreement on the part of the insurance company to pay in case of loss is concurrent with the agreement upon the part of the mortgagee to subrogate the company, on such payment, to the extent thereof, to all his rights under securities held by him for the payment of the mortgage debt, and the defendant Everson, the mortgagee, having by foreclosure of the mortgages and the sale of the

property subsequent to the fire, put it out of his power to subrogate the insurance companies to the rights which he had
under such securities at the time of the fire, he cannot recover
in this action against the defendants, the insurance companies.
(*Lett* v. *G. F. Ins. Co.*, 52 Hun, 570; 125 N. Y. 82; *Fayerweather* v. *P. Ins. Co.*, 118 id. 324; *Dilling* v. *Draemel*, 16
Daly, 104; *N. I. F. Ins. Co.* v. *F. T. & T. Co.*, 123 Penn. St.
576.) The contract of insurance being one of indemnity
merely where the interest of a mortgagee is specially insured
as such, the insured would, on payment of the loss to the
mortgagee, be entitled by law, irrespective of any agreement,
to be subrogated to that extent to all securities held by the
mortgagee for the payment of the debt. (*Ins. Co.* v. *Woodruff*, 26 N. J. L. 541; *A. F. Ins. Co.* v. *Tyler*, 16 Wend.
397.) The court below erred in holding that the other insurance upon the property held by the receiver of the Syracuse
Screw Company, but not made payable to the mortgagee,
should not contribute to the payment of the loss. (*S. F. &
M. Ins. Co.* v. *Allen*, 43 N. Y. 394.)

*Watson M. Rogers* for respondent. The mortgagee clause
provides for the payment of the loss to Everson as his interest
may appear; " and this insurance as to the interest of the
mortgagee (or trustee), only, thereon shall not be invalidated
by any act or neglect of the mortgagor or owner of the within-
described property." This furnishes a complete answer by him
to the defense. (122 Mass. 165.) The claim that Everson
should share with the Eddy policies is untenable. (*Adams* v.
*G. Ins. Co.*, 9 Hun, 445–448; *Crow* v. *G. Ins. Co.*, 66 id.
54; *Titus* v. *G. F. Ins. Co.*, 81 N. Y. 410; *L. M. Co.* v. *S.
F. Ins. Co.*, 88 id. 491.) The mortgagee clause constitutes an
independent contract between the insurance company and the
mortgagee, and enables him to recover, notwithstanding a violation of the conditions of the policy by the owner. (*Hastings*
v. *W. F. Ins. Co.*, 73 N. Y. 141; *Eddy* v. *L. A. Co.*, 65
Hun, 307.) The mortgagee may make any contract with the
insurer for the protection of his interests so far as they do not

impair the rights of the mortgagor. (*U. C. S. Inst.* v. *L. &
H. Ins. Co.*, 73 N. Y. 161; *Foster* v. *Van Reed*, 70 id.
90.) He may collect the amount due on the policy, notwith-
standing the property undestroyed is sufficient to pay the mort-
gage debt. (*E. Ins. Co.* v. *R. I. Ins. Co.*, 53 N. Y. 344.)
Independently of the contract, the insurer has only an equita-
ble right to be subrogated *pro tanto* to such rights as the
insured himself has in respect to the mortgagee after receiv-
ing payment of the loss. (*Kernochan* v. *N. Y. B. Ins. Co.*,
17 N. Y. 428.) There must first be complete compensation.
(Beach on Mod. Eq. Juris. § 818.) So, where the loss is less
than the mortgage debt, the insurer to entitle itself to take the
security, must pay the loss not only, but the balance on the
mortgage. (Wood on Ins. 1073, § 496.) If the insurance
companies desire the benefit of subrogation, either upon the
principles of the common law or upon the agreement con-
tained in the policy, they must first pay the mortgagee's debt,
assert their right of subrogation, and themselves enforce the
judgments which they have thus paid, and, as to the mort-
gagee, extinguished. (*F. N. Bank* v. *Wood*, 71 N. Y. 405;
*Platt* v. *Brick*, 35 Hun, 121.) The regularity of Everson's
procedure in these actions cannot be questioned or con-
sidered here, but that it was authorized is apparent. (Code
Civ. Pro. §§ 501, 522, 1204; *M. T. Co.* v. *T. R. R. Co.*, 43
Hun, 521; *A. C. S. Inst.* v. *Burdick*, 87 N. Y. 40; *Carpen-
ter* v. *M. L. Ins. Co.*, 93 id. 552.)

PECKHAM, J. The plaintiff commenced the above action
against the corporation defendant upon a policy of fire insur-
ance issued by the company by which plaintiff as receiver was
insured against loss or damage by fire on certain property
situated in Syracuse, and formerly owned by the screw com-
pany of that city. The defendant Everson was insured in
the same policy as mortgagee, as his mortgage interest might
appear. He was joined as defendant in order that the whole
controversy might as between all the parties be settled at once.
Actions were also commenced against several other insur-

ance companies by the plaintiff as receiver, at the same time and to recover upon policies covering substantially the same premises. The judgments in favor of the plaintiff in these other actions are also now before us for review. The questions arising affect generally all the insurance companies, although one or two of such questions are not raised in all the policies.

The plaintiff failed to recover, and his complaint was dismissed in the courts below because of the violation of provisions in the policies in regard to procuring other insurance without the companies' consent, and also because of the plaintiff's permitting foreclosure proceedings to be commenced to foreclose certain mortgages upon the insured premises. The plaintiff has not appealed.

The defendant Everson and the corporations defendant served cross-answers upon each other, Everson contending that he should be allowed to recover from the companies to the extent of his policies upon his mortgage interest in the premises, while the companies set up several defenses to such claim, which will be noticed hereafter. The cases were referred for trial and the referee reported in favor of Everson as against the insurance companies, and the judgments were affirmed at the General Term of the Supreme Court after a slight modification as to the amounts of the recoveries, and the insurance companies have appealed to this court. The only questions to be determined arise between defendant Everson and the companies. By the judgment entered upon the report of the referee it is provided in all cases that the insurance companies on making payment of the loss are entitled to be subrogated to the rights of the mortgagee, but such subrogation is not to impair the mortgagee's right to enforce the collection of his claim in full against the principal debtor, nor by means of any collateral security he may hold. This was placed in the judgments in accordance with the reports of the referee.

*First.* The companies urge that defendant Everson, the mortgagee, having foreclosed the mortgages upon the premises and sold the same under his judgment of foreclosure and sale subsequent to the time of the fire, has thereby put it out of his

power to subrogate them to the rights which he had under the securities held by him at the time of the fire, and he, therefore, cannot recover in this action against them. It appears that the Syracuse Screw Company was the original owner of the premises and it had given three several mortgages thereon, one dated August 13, 1881, for $4,500; one dated November 3, 1883, for $14,000; another dated June 30, 1885, for $10,000. The defendant Everson on the 9th day of June, 1888, was the owner of all of these mortgages, and on that day commenced one action against the screw company to foreclose them. On the 23d of June, 1888, the screw company was dissolved and Eddy was appointed the receiver. The company was wholly insolvent and had no property other than the mortgaged premises. In July, 1888, Eddy, as receiver, duly appeared in the foreclosure action and served an answer setting up a defense to the $10,000 mortgage. On the 4th of December, 1888, a fire occurred by which the property covered by the policies was damaged, and appraisers were appointed on the 18th of December, and on the 21st of Dec., 1888, they made their award by which they determined the damage resulting to the property from the fire to have been $10,102.90. The companies refused to pay Eddy on the grounds already stated.

Everson severed his foreclosure action after Eddy put in his answer setting up a defense as to one of the mortgages, and on the 17th of Dec., 1888, obtained judgment by default for the foreclosure of the $4,500 and $14,000 mortgages, and decreeing a sale of the premises in satisfaction thereof. Subsequent to the fire, and on the 9th of January, 1889, the property was sold under the foreclosure judgment for the sum of $15,400, leaving a deficiency on those two mortgages, including interest and costs, of $4,921.86.

Each of the policies of insurance had a provision therein known as the "New York Standard Mortgage Clause," and under it the loss, if any, was made payable to defendant Everson, as his mortgage interest might appear. The clause contained a provision that the insurance of Everson's interest should not be invalidated by any act or neglect of the mort-

gagor or owner of the property, nor by any foreclosure or other proceedings or notice of sale relating to the property. The clause also contained the further provision that "whenever this company shall pay the mortgagee (or trustee) any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall, to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may, at its option, pay to the mortgagee (or trustee) the whole principal due or to grow due on the mortgage, with interest, and shall thereupon receive a full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee (or trustee) to recover the full amount of his claim."

The companies did claim that, as to the owner of the premises, no liability existed. They never in any manner consented to the institution of foreclosure proceedings.

At the time when they were commenced, June, 1888, no fire had occurred, and the defendant Everson was acting strictly within his legal rights when he commenced them. It must be assumed that the commencement of the foreclosure proceedings terminated any interest which Eddy might have had in the policies up to that time. There was, however, a separate and wholly distinct insurance of the interest of Everson in the property, and, by the terms of that contract of insurance, it was not to be affected by any act or neglect of the mortgagor or owner of the property, or by any foreclosure or other proceedings, or notice of sale relating to the property. The act which forfeited the interest of the owner in a policy was not to affect the interest of the mortgagee.

Consequently, the mortgagee violated no contract on his part when he commenced the proceedings to foreclose his mortgage, and thus endeavored to collect his debts. Before he had proceeded so far as a judgment of foreclosure a fire occurred. What was he to do? Was he bound to stay further proceedings and accept payment of the amount of his

insurance and then assign to the extent of such payment his rights in the mortgages to the companies? We think not. Such is not the meaning of the clause when read as a whole. Foreclosure proceedings were not to affect his rights. This was expressly provided for and agreed to. Although there was an agreement to subrogate, yet that agreement was also upon the condition that subrogation should not impair the mortgagee's right to recover the full amount of his claims. The two rights must be considered together, and though subrogation under certain circumstances may, under the agreement, be insisted upon, yet, unless payment of his mortgage debt is made, the mortgagee must have the right to proceed with the foreclosure and to a sale of the premises, for otherwise it could not be seen whether a subrogation prior to a sale would not impair his right to recover the full amount of the claim of the mortgagee.

If the insurers desired an immediate subrogation, then they had a right, by the terms of their contract, to pay the whole debt and take an assignment of the bond and mortgage and whatever other securities the mortgagee might have for the payment of his whole claim. Otherwise the insurers must wait if the mortgagee desire to continue the foreclosure. The right of the mortgagee to recover his full claim might be pretty sadly impaired if he had to subrogate at once, or, in other words, permit the insurers to collect out of his securities the very amount which they had paid him upon the policies issued to increase his security. It is not the mere right to prosecute which is not to be impaired, but the right to payment in full of his claim. This is not to be impaired by any claim of subrogation. Here is a very apt case in which to illustrate the point. The mortgagee sustains a loss upon the sale under the foreclosure decree of the two mortgages of nearly $5,000. There is the third mortgage upon which judgment of foreclosure was obtained, and the amount found due thereon was $12,474, and interest runs on that sum from January 15, 1890. The argument of the companies, if allowed, would lead to their sharing in the amount realized upon the

foreclosure sale to the extent of the payments made by them
on their policies, some ten thousand dollars, and the balance,
some five thousand dollars, only would be realized by the
mortgagee.   In other words, he would receive no benefit
whatever from the insurance, for the companies would take
out of the proceeds of the foreclosure sale precisely the
amount they paid him upon the policies of insurance.

What meaning is given to the words in the mortgagee clause,
that no subrogation shall impair the right of the mortgagee to
recover the full amount of his claim, if subrogation can be
insisted upon under such circumstances?   Insurance is taken
for the purpose of increasing the security of the mortgagee.
By the construction contended for by the companies there is
really no such insurance.   If the sale under foreclosure
amounts only to the total of the insurance, but does not reach
the full sum of the mortgagee's claim, the latter recovers
nothing but the insurance money, while the companies are
reimbursed their outlay from the proceeds of the foreclosure
sale.   They lose nothing, and only the mortgagee loses.   This
consequence is avoided, and, I think, was intended to be
avoided, by the provision in question, which makes the right
of subrogation dependent upon the fact that its exercise shall
not in any manner impair the right of the mortgagee to full
payment of his claim.   Where the contract provided that it
should not impair the mortgagee's right to recover the full
amount of his debt, the right to recover meant the right to
demand and to receive full payment of his debt or claim.   If
that right is not impaired by the insurers' right of subrogation,
as claimed by them, it is impossible to say under what circum-
stances it would be impaired.   We cannot recognize the cor-
rectness of this claim on the part of the insurers.

*Second.*   Another question arises in regard to the so-called
contribution.   It seems that the plaintiff Eddy, without the
consent of these defendant insurers, procured other insurance
upon the property.   This additional insurance thus procured
rendered the policies of these insurers invalid as to the plain-
tiff.   They contend, nevertheless, that in arriving at the pro-

portion of the loss payable by each of them to the mortgagee, this other insurance should be reckoned as part of the insurance on the property. It was procured by plaintiff without the consent or knowledge of the mortgagee, and was not made payable in any event to him, and did not insure his interest in the property. If the claim of these defendant insurers be allowed the effect is to reduce the amount which each is liable to pay to the mortgagee, and thereby to lessen his total recovery, as he has no claim under the other and additional policies. The clause under which this claim is made provides in the body of the policy that the insurer "shall not be liable for a greater proportion of any loss on the described premises than the amount thereby insured shall bear to the whole insurance, whether valid or not."

I think the courts below were right in rejecting this claim of the insurers. Taken in connection with the language in the mortgagee clause the contract is quite plain. The provision in the latter clause, that the insurance of the mortgagee should not be invalidated by any act or neglect of the owner of the property, applies, among others, to a case of other insurance of his own interest by the owner without the knowledge or consent of the mortgagee.

The effect of the mortgagee clause hereinbefore set forth is to make an entirely separate insurance of the mortgagee's interest, and he takes the same benefit from his insurance as if he had received a separate policy from the company, free from the conditions imposed upon the owners.

Where the company agreed that the mortgagee's insurance should not be "invalidated" by any act or neglect of the owner of the property, it was not intended to limit the application of that word to a case where the whole policy would otherwise be rendered invalid. The plain and obvious meaning of the language is that the insurance of the mortgagee should not be affected or in any wise impaired or lessened by any act or neglect of the owner. Although contained in the same policy issued to the owner, yet the insurer and the mortgagee were nevertheless entering into a perfectly

separate contract of insurance, by which the mortgagee's interest alone was to be insured and it would be most natural to provide that no act or neglect of the owner should invalidate, that is, impair any portion of the insurance thus separately secured. Can it for a moment be supposed that a mortgagee would otherwise ever consent to such a contract? His desire is to obtain security and to that end he insures his interest in the property. Would he knowingly consent that this security should be liable to be wholly frittered away and made valueless by the action of the owner, unknown to him, in procuring insurance upon the owner's interest in the property? Would any sane man agree to hazard his security in such a way? Would he agree that the value of his security should depend upon the acts of a third party over whom he had no control and of whose acts he might be wholly ignorant? The statement of the proposition is its best refutation. These views are supported by both of the opinions in the case of *Hastings* v. *Westchester Fire Insurance Co.* (73 N. Y. 141).

There is some difference in the verbiage of the clause in the reported case and that to be found in the clause under examination here. In the *Hastings* case the clause as to contribution contained the proviso that in case of other insurance, the *assured* should recover only a proportionate sum from defendant company. The owner of the property had mortgaged it to plaintiff's testator and had subsequently obtained an insurance upon his own interest as owner, and subsequent to that time the indorsement in favor of the mortgagee was made, and it was in the body of the policy issued to the owner that the language was used as to the *assured*. In the clause here under consideration it is seen that the word *assured* does not appear, and the condition is that in case of other insurance the company shall not be liable under the policy, etc. The court in the *Hastings* case thought the word *assured* referred to the person who was first insured when the policy was issued, and was not transferred to the mortgagee when he subsequently by a minute placed in the policy was made an assured also. This is very true, but a perusal of the

whole case shows that the controlling idea was a separate insurance of the mortgagee, freed from the conditions attached to the insurance of the owner, and not to be impaired or weakened by any act or neglect of such owner.

Force must be given to this positive language of the contract, and no act or neglect of the owner can be permitted to invalidate, *i. e.*, impair or weaken (73 N. Y. at 149) the validity of the agreement for the full amount named in the policy. By taking the insurance in the manner the mortgagee herein did, instead of taking out a separate policy, all the provisions in the policy, which from their nature would properly apply to the case of an insurance of the mortgagee's interest, would be regarded as forming part of the contract with him, while those provisions which antagonize or impair the force of the particular and specific provisions contained in the clause providing for the insurance of the mortgagee, must be regarded as ineffective and inapplicable to the case of the mortgagee. So when the agreement in regard to contribution, contained in the body of the policy issued to the owner, is compared with the specific statement in the mortgage clause, that his insurance shall not be invalidated by any act or neglect of the owner, we can only give the latter due force by holding that the insurance of the mortgagee is not, in effect or substance, to be even partially invalidated, *i. e.*, reduced in amount, and to that extent impaired and weakened by any act of the owner unknown to the mortgagee. In such case the general agreement in the body of the policy as to contribution does not, and was not, intended to apply. If it did, then the special and particular contract in the mortgagee clause would be of no effect. If the two are inconsistent, the special contract particularly relating to the mortgagee's insurance, must take precedence over the general language used in the policy issued to the owner. For these reasons the claims of the insurers for a deduction in the amount of their liability cannot be allowed.

*Third.* As to three of the policies, the mortgagee clause itself contained the provision that the company was only to be

liable in the proportion which the sum it insured should bear to the whole amount of insurance on the property, issued to or held by any party or parties having an insurable interest therein, whether as owner, mortgagee or otherwise. What meaning is to be attached to this provision after taking into consideration the language heretofore quoted that the insurance of the mortgagee will not be invalidated by any act or neglect of the owner of the property?

The act of obtaining this additional insurance was the act of the owner, and it was unknown to the mortgagee, and of course, not consented to by him. The additional insurance could by no possibility benefit him, as it was not upon any interest of his in the property. He could not, therefore, resort to any of these additional policies for his indemnity. It is not a case of contribution in any sense, but simply one, on the insurers' theory, of diminution of their liability, caused by the act of the owner and unknown, and with no possible corresponding benefit to the mortgagee. As a general principle it is settled that, before this apportionment of the loss between different companies can be demanded, the different policies must have been upon the same interest in the same property or some part thereof. (*Lowell Manfg. Co.* v. *Safeguard Fire Ins. Co.*, 88 N. Y. 592.) Has this principle been changed by this contract? Can it be that the mortgagee would knowingly consent to a diminution of this liability to an extent which might leave it of no value, consequent upon a secret act of a third party, and where by no possibility could he protect his security from such danger? All the reasoning given under the head last above discussed applies with equal force here, at least so far as the probabilities of entering into such a contract by the mortgagee are concerned. It is clear that the only object of the mortgagee is to obtain a security upon which he can rely, and this object is, of course, also plain and clear to the insurer. Both parties proceed to enter into a contract with that one end in view. In order to make it plain beyond question the statement is made that no act or neglect of the owner with regard to the property shall invalidate the

insurance of the mortgagee.. When, in the face of such an agreement, entered into for the purpose stated, there is also placed in the instrument a provision as to the proportionate payment of a loss, we think the true meaning to be extracted from the whole instrument is that the insurance which shall diminish or impair the right of the mortgagee to recover for his loss is one which shall have been issued upon his interest in the property, or when he shall have consented to the other insurance upon the owner's interest. This may not, perhaps, give full effect to the strict language of the apportionment clause, but if full effect be given to that clause, and it should be held to call for the consequent reduction of the liability of the insurers in such a case as this, then full effect is denied to the important and material, if not the controlling, clause in the contract, which provides that the insurance of the mortgagee shall not be injuriously "impaired or affected" by the act or neglect of the owner. As used in these mortgagee clauses, this is the meaning of the word "invalidate." (*Hastings* v. *Ins. Co.*, *supra*, at page 149.)

We must strive to give effect to all the provisions of the contract and to enforce the actual meaning of the parties to it as evidenced by all the language used within the four corners of the instrument. We are also at liberty to consider the purpose for which the contract was executed, where that purpose plainly and necessarily appears from a perusal of the whole paper. That construction will be adopted, in the case of somewhat inconsistent provisions, which, while giving some effect to all of them, will at the same time plainly tend to carry out the clear purpose of the agreement; that purpose which it is obvious all the parties thereto were cognizant of and intended by the agreement to further and to consummate. There is no equity in this claim on the part of the insurers, and we think, from a perusal of the whole clause in the policy, that it was not intended to and that it does not cover such claim.

The judgments of the Supreme Court must be affirmed, with costs in each case.

All concur, except ANDREWS, Ch. J., not sitting.

Judgments affirmed.