Young Men's Lyceum of Tarrytown, Respondent, Appellant, *v.* National Ben Franklin Fire Insurance Company of Pittsburgh, Pa., Appellant, Respondent.

Second Department, February 2, 1917.

Insurance — action on fire insurance policy made payable to plaintiff as mortgagee — warranty by insured that premises were located near fire hydrant — mortgagee cannot recover if warranty were false — new trial — issue as to whether warranty was contained in original policy or was subsequently added.

Where a policy of fire insurance at its inception contained a clause by which the insured warranted as a then existing condition that his premises are located not over 500 feet from a public fire hydrant, and by a

subsequent rider attached to the policy the loss thereunder was made payable to the plaintiff as mortgagee as his interest may appear, the plaintiff is not entitled to recover on the policy where his complaint shows that the warranty as to the existence of the fire hydrant was false, for in such case the policy was void from the beginning and the mortgagee gained no rights thereunder.

But where the plaintiff claims that the warranty as to the location of the hydrant was stamped on the policy after it was issued and was no part of the original contract with the insurer, the court on reversing judgment for the plaintiff entered on a directed verdict will grant a new trial, so that this issue of fact may be determined.

CROSS-APPEALS by the plaintiff, Young Men's Lyceum of Tarrytown, and the defendant, National Ben Franklin Fire Insurance Company of Pittsburgh, Pa., from parts of a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Westchester on the 23d day of June, 1916, upon the verdict of a jury rendered by direction of the court, and also an appeal by the defendant from an order entered in said clerk's office on the 8th day of July, 1916, denying its motion for a new trial made upon the minutes.

*Joseph B. Thompson,* for the plaintiff.

*William D. Murray,* for the defendant.

THOMAS, J.:

The defendant issued to landowners a policy dated March 2, 1915, insuring, to the amount of $5,000 against loss by fire, buildings which are described as "situated off Taxton Road, about 50 feet from East Irvington Road, East Irvington, Westchester County, New York." There is a warranty that the "property is located not over 500 feet from a public fire hydrant." The question is whether the warranty affects the plaintiff, a mortgagee. The policy carries an undated rider called a "Mortgagee Clause" to the effect that the "Loss or damage, if any, under this policy, shall be payable" to the plaintiff "mortgagee,   *   *   *   as interest may appear." After some stipulations and provisos, later noticed, are the words "*Attached to and forming part of policy No. 648304.*"

The mortgagee clause has a provision that the insurance "shall not be invalidated by any act or neglect of the mortgagor or owner * * * nor by any foreclosure or other proceedings or notice of sale relating to the property, nor by any change in the title or ownership of the property, nor by the occupation of the premises for purposes more hazardous than are permitted by this policy; Provided, that in case the mortgagor or owner shall neglect to pay any premium due under this policy, the mortgagee * * * shall, on demand, pay the same." Then follows a proviso that the mortgagee shall pay premiums for increased hazard that shall come to his knowledge. There is a right reserved to cancel the policy on terms stated. Then follows: "Whenever this company shall pay the mortgagee [or trustee] any sum for loss or damage under this policy and shall claim that, as to the mortgagor or owner, no liability therefor existed, this company shall to the extent of such payment, be thereupon legally subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral to the mortgage debt, or may at its option, pay to the mortgagee [or trustee] the whole principal due or to grow due on the mortgage with interest, and shall thereupon receive the full assignment and transfer of the mortgage and of all such other securities; but no subrogation shall impair the right of the mortgagee [or trustee] to recover the full amount of its claim." There was a fire with a loss of $2,500, which, applied on the mortgage, would leave unpaid $2,000. The court gave judgment for the amount alleged to be due on the policy, and decreed that upon paying the same the "defendant shall to the extent of such payment be subrogated to all the rights of the plaintiff under the bond and mortgage." When the plaintiff rested, the defendant's counsel said, "I offer now to pay the mortgagee upon being subrogated to the extent of our payment," and upon the court saying, "I will recite in the judgment that you are subrogated," answered, "That will be satisfactory to us." If, then, the court was not in error in decreeing subrogation, defendant cannot complain. But plaintiff insists that it is entitled to judgment for the loss without pro-

vision for subrogation. The defendant pleads that the policy is void because there appears on its face, as if stamped thereon in red ink, the following: "In consideration of the reduced rate at which this policy is written, it is expressly stipulated and made a condition of this contract that at the time when this policy is issued the property is located not over 500 feet from a public fire hydrant, and within 1½ miles of a regularly organized and equipped Volunteer or Paid Fire Department station." Just below the same is the following, printed as a part of the form of the policy: "This policy is made and accepted subject to the foregoing stipulations and conditions, and to the following stipulations and conditions printed on back hereof, which are hereby specially referred to and made a part of this Policy, together with such other provisions, agreements, or conditions as may be endorsed hereon or added hereto." Many printed provisions are indorsed on the policy. The complaint shows that the protective warranty as to the fire hydrant was untrue. The plaintiff alleged that the protective warranty clause was not on the policy when issued. But, as the court ruled that clause did not affect the mortgagee, disputed questions of fact were not pursued. If the decree of subrogation is justified, the insurer upon payment of the loss to the mortgagee becomes with it a tenant in common in the ratio of the amount paid to the whole mortgage. In that case, in an action of foreclosure or on the bond, the insurance company must be made a party plaintiff, or, refusing that, a defendant, and may participate in the conduct of the case. The owner may present the issue that the mortgage is in part paid. The mortgagee must abide the solution of that question, however it may delay or diminish recovery. It may be answered that the mortgagee made its contract and should abide the inconvenience of it. The words are that "this company shall to the extent of such payment, be thereupon *legally* subrogated to all the rights of the party to whom such payment shall be made, under all securities held as collateral," etc. It chances that an action is pending. But the company could, and if liable should, pay without suit. Could it then demand assignment of a *pro tanto* interest in the mortgage? If it could not, it should have no better right after erro-

neously refusing payment. What is legal subrogation? To that the stipulation commits the parties. It is a succession to rights against the debtor by operation of law, but it must be effected in such way as not to "impair the right of the mortgagee * * * to recover the full amount of its claim." Such also is the stipulation. The question was discussed in *O'Neil* v. *Franklin Fire Insurance Co.* (159 App. Div. 313; affd., 216 N. Y. 692). There the stipulation between the mortgagee and insurer was similar to that in question. The court said: "This clause should not be construed to vest in the insurance company the right to subrogation upon the mere assertion of claim, unfounded in fact, and such was not the intent or purpose of the clause in question. The claim which it may assert must be a valid and well-founded claim, and so it has been held in construing mortgagee clauses identical with this." The parties were all before the court and the litigation was intended to be in such form that all questions could be determined. In any case a court of equity should not, under the present state of facts, associate the defendant with the plaintiff in the ownership of the mortgage. If the defendant is not liable to the mortgagee on the mortgage, it is not entitled to subrogation. It claimed not to be liable, and enforced that issue before the court. After defeat it asked to be subrogated as against the creditor to the very rights of the mortgagee. In other words, it unjustly forced the mortgagee to compel payment and then asks to be favored and protected in the very judgment, which, but for its delinquency, would not exist. Thus it would take advantage of its own default. Upon the assumption of liability it has been rewarded for delinquency, and thereby the mortgagee's remedy against the mortgagor incumbered. In *Eddy* v. *L. A. Corporation* (143 N. Y. 311) the question arose. Eddy was the receiver of the company that procured the insurance upon its property, and the mortgagor of three several mortgages. Everson was the mortgagee, and the mortgagee clause was similar to the present one. (See opinion, pp. 318, 319.) Eddy began the action upon the policy after loss by fire, and Everson "was joined as defendant in order that the whole controversy might as between all the parties be settled at once." The mortgagee and the company

Second Department, February, 1917.    [Vol. 177.

served cross answers upon each other.   The plaintiff, mortgagor, failed to recover and his complaint was dismissed by the trial court "because of the violation of provisions in the policies in regard to procuring other insurance without the companies' consent, and also because of the plaintiff's permitting foreclosure proceedings to be commenced to foreclose certain mortgages upon the insured premises."   The plaintiff did not appeal.  As between the mortgagee and the insurance company it was decided by the trial court and the Appellate Division that the mortgagee could recover.   It appeared, however, that the mortgagee had foreclosed upon the premises and under judgment sold them subsequent to the fire and "thereby put it out of his power to subrogate them to the rights which he had under the securities held by him at the time of the fire." Judge PECKHAM writes: "If the insurers desired an immediate subrogation, then they had a right by the terms of their contract to pay the whole debt and take an assignment of the bond and mortgage and whatever other securities the mortgagee might have for the payment of his whole claim.   Otherwise the insurers must wait if the mortgagee desire to continue the foreclosure.   The right of the mortgagee to recover his full claim might be pretty sadly impaired if he had to subrogate at once, or, in other words, permit the insurers to collect out of his securities the very amount which they had paid him upon the policies issued to increase his security."   I conclude that the subrogation provision in the judgment is improper. The remaining question is, whether the protective warranty extends to the mortgagee.  It is urged that the insurer could not introduce the protective warranty in a standard policy.   A standard policy may contain "matter necessary to clearly express all the facts and conditions of insurance on any particular risk not inconsistent with or a waiver of any of the conditions or provisions of the standard policy herein provided for." (See Insurance Law [Consol. Laws, chap. 28; Laws of 1909, chap. 33], § 121, as amd. by Laws of 1913, chap. 181.)   The location and environment of the property were vital matters. They were essentials of the risk.   It was of great moment whether there were usable water facilities for protecting the building.   The acceptance of the risk might well depend upon

it. When, therefore, the assured represented that the property was located "not over 500 feet from a public fire hydrant," and expressly stipulated that fact as a condition of the contract, there was brought into the policy a matter necessary to express clearly a fact and condition that affected the risk. But is it binding on the mortgagee? If the agreement was merely that any loss should be payable to the mortgagee, there should be no doubt but that the mortgagee could claim payment only pursuant to the terms of the policy. The parties, insurer and mortgagee, did something more. They made agreement whereby certain conditions, that would avoid the policy as to the mortgagor, were selected and excluded as to the mortgagee. That agreement became a part of the policy. It was agreed that the policy "shall not be invalidated by any act or neglect of the mortgagor." What is the scope of the words? They may cover something actually done or a duty omitted or imperfectly done, but they do not fit a warranty that the property is located within a given distance of a fire hydrant. The warranty is not an act or neglect. The assured did not promise that he would so place a public hydrant. It was not a condition that was the subject of his act or neglect. His fault was in assuring the presence of the hydrant and making the validity of the policy dependent on it. In *Reed* v. *Firemen's Ins. Co.* (81 N. J. L. 523) it was said: "The words of the clause 'loss shall be payable,' amount to a waiver by the company, in favor of the mortgagee, of the effect of any prior or contemporaneous act of the owner which would have a vitiating effect upon the policy." Let that be adopted, yet if such interpretation be here applied, the word "act" would not only include something done, but also each and every stipulation made by the assured, and would leave the agreement with the mortgagee a promise to pay absolutely and at all events, unless the direct agreement with the mortgagee were broken. The words usually do not have that meaning and are not so used. In *Syndicate Ins. Co.* v. *Bohn* (65 Fed. Rep. 165); *Hastings* v. *Westchester Fire Ins. Co.* (73 N. Y. 141) and *Eddy* v. *L. A. Corporation* (143 id. 311), the words "act" or "neglect" are interpreted as in *Reed* v. *Firemen's Ins. Co.* (*supra*) and there are sentences in each opinion

to the effect that the insurer's contract with the mortgagee was distinct and independent of the policy. But the things that were urged as defeating the policy in each case did involve an act or neglect of the mortgagor, although in the *Bohn* case the opinion also presents the distinct and second ground of judgment that the tender of the policies to the mortgagee was a representation that they were existing and valid. When an insurance company contracts with a mortgagor and with a mortgagee, and makes the contract with the latter a part of the policy, it cannot be the intention to nullify the essential stipulation upon which its validity depends, leaving a mere provision to pay absolutely in case of loss, especially where the insurer and the mortgagee have definitely selected what conditions should not affect the mortgagee. The two instruments should be read together, and in that view the opinion in the *Eddy* case is instructive, that "all the provisions in the policy, which from their nature would properly apply to the case of an insurance of the mortgagee's interest, would be regarded as forming part of the contract with him, while those provisions which antagonize or impair the force of the particular and specific provisions contained in the clause providing for the insurance of the mortgagee, must be regarded as ineffective and inapplicable to the case of the mortgagee." If the cases were intended to hold that the policy was one thing and the contract with the mortgagee something quite separate and totally unaffected by the terms of the policy, the impracticability of such conclusion later appeared. *Heilbrunn* v. *German Alliance Insurance Co.* (140 App. Div. 557) was affirmed in 202 New York, 610, where it is said: "On the merits we concur with the opinion of Scott, J., below." The question involved was whether the mortgagee was obliged to serve proofs of loss, as the policy required. That matter involved a stipulated statute of limitations. Mr. Justice Scott proceeded upon the theory that the mortgagee clause was independent. But he also called attention to the fact that the policy, as does the present policy, provides: "If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee, or of any person or corporation having an interest in the subject of insurance other than the

interest of the insured as described herein, the conditions *here-inbefore* contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto." That stipulation in the policy was found between lines 56–59, and the decision was that only stipulations preceding that could enter into the mortgage agreement, and as the provision for proofs of loss was subsequent to that, it did not affect the mortgagee. In *McDowell* v. *St. Paul F. & M. Ins. Co.* (207 N. Y. 482) it is stated (p. 487) that following the *Heilbrunn* case the court would now reach the conclusion found in the *Eddy* case "for a different reason, *i. e.*, that the contribution clause of the policy *follows* the provision in lines 56 to 59." The same clause as in the *Heilbrunn* case is found among those indorsed between lines 56 and 59 in the present policy, but the protective warranty in question precedes it. How, then, can it be said, in view of such later decisions and the very reading of the policy between the lines mentioned, that the protective warranty does not affect the mortgagee? In the *McDowell* case the only mortgagee clause was "Loss, if any, first payable to John McDowell, Mortgagee, as his interest may appear." It was considered, in analogy to the decisions under the mortgagee clause in the standard policy, that the mortgagee's right was not affected by the neglect or refusal of the owner to make proof of loss. But Judge MILLER writes: "The further study of the terms of the standard policy strengthens the view, taken in the *Heilbrunn* case, that the provisions which *follow* lines 56 to 59, most of which relate in terms to the 'insured,' were not intended to apply to a mortgagee." Does not that mean that provisions preceding such lines, and not specifically excluded by the mortgagee clause, do apply? In *Hartwig* v. *American Insurance Co.* (169 App. Div. 60), this court decided that the eighty per cent clause affected both the mortgagor and the mortgagee. The eighty per cent clause precedes the numbered lines, and the decision is obviously correct. In *Genesee Falls Sav. Assn.* v. *U. S. Fire Ins. Co.* (16 App. Div. 587), decided after both the *Hastings Case* (73 N. Y. 141) and the *Eddy Case* (143 id. 311), Mr. Justice ADAMS wrote to the effect that the mortgagee clause in the standard policy

**360** Young Men's Lyceum *v.* Nat. Ben Franklin F. Ins. Co.

Second Department, February, 1917.        [Vol. 177.

did not exempt the mortgagee from the stipulation in the policy that "This entire policy shall be void * * * if the interest of the insured in the property be not truly stated herein," and so as to a stipulation "if the interest of the insured be other than unconditional and sole ownership, or if the subject of insurance be a building on ground not owned by the insured in fee simple." As a second ground for his views, Mr. Justice ADAMS refers to the fact that the mortgagee knew of the breach of the condition and was instrumental in obtaining the policy. The protection warranty precedes lines 56 to 59, and by the terms of the policy is made applicable to the mortgagee. It is printed on the face of the policy preceding the execution of it; it does not involve an act or neglect of the mortgagor, and in its nature it cannot do so. All the cases to which I have called attention, except *Genesee Falls Sav. Assn.* v. *U. S. Fire Ins. Co.* (*supra*), involve an act or neglect of the mortgagor. The mortgagee clause must be read in connection with the rest of the policy, of which it is made a part, and all conditions that are consistent with it, and not exempted by it, must be deemed to be incorporated in it. In my judgment the protective warranty is applicable and the judgment and order should be reversed, without costs of this appeal, and a new trial had, costs to abide the event, to the end that it may be determined whether the protective warranty was stamped on the policy after it was issued, as the mortgagee claims, or whether there be other answer to it.

STAPLETON, J., concurred; PUTNAM, J., concurred on ground stated in separate memorandum, with whom JENKS, P. J., concurred; CARR, J., not voting.

PUTNAM, J.:

In view of the warranty *in præsenti* that "the property is located not over 500 feet from a public fire hydrant," and the concession in the complaint that there was then no such hydrant, I think the insurance never attached, since the existence of this hydrant was made a condition precedent. The contract was thus dead at its inception. (*Wilson* v. *Herkimer County Mutual Ins. Co.,* 6 N. Y. 53.) The "mortgagee

clause" presupposes an insurance contract. But if the risk never attached the mortgagee's rights have had no inception. I concur on this ground.

JENKS, P. J., concurred.

Judgment and order reversed, without costs of this appeal, and a new trial granted, costs to abide the event, to the end that it may be determined whether the protective warranty was stamped on the policy after it was issued, as the mortgagee claims, or whether there be other answer to it.