BAKER et al. v. LIVERPOOL & LONDON & GLOBE INS. CO., Limited, et al. (No. 6855.)

(Court of Civil Appeals of Texas. Austin. June 10, 1925. Rehearing Denied July 6, 1925.)

1. Insurance ⊸389(2)—Mortgagee, applying for policy, and informing insurance agent as to conditions of ownership of property and paying premiums, held insured thereby.

Where mortgagee applied to insurance agent for policy on mortgaged property and explained conditions of ownership and his interest therein, and paid premiums, in view of provision of policy that loss was to be payable to mortgagee as his interest might appear, mortgagee was insured thereby.

2. Insurance ⊸639—Petition by mortgagee to recover on insurance policy, payable as mortgagee's interest should appear, held sufficient without specific prayer or request for reformation of policy.

In action on insurance policy, by mortgagee who pleaded in detail all facts leading to execution and delivery of policy which was executed and delivered by insurance agent with knowledge of conditions of ownership of property, and contained clause for payment to mortgagee as interest might appear, petition was sufficient to authorize recovery without specific prayer or request for reformation of policy

3. Insurance ⊸143(7)—Reformation of regular insurance contract, insuring interest of mortgagee, held not necessary to recovery thereon.

Where mortgagee explained conditions of ownership of property to insurance agent, who issued policy on mortgaged property, payable to mortgagee as his interest might appear, reformation of policy was not necessary as prerequisite to recovery thereon.

4. Insurance ⊸328(14) — Mortgage foreclosure provision of insurance policy held not to prohibit foreclosure by mortgagee nor recovery under policy.

Where insurance agent issued insurance policy to mortgagee, covering mortgaged property, which by rider attached thereto was payable to mortgagee as his interest might appear, mortgage foreclosure clause, making policy void if, before fire occurred, insured should obtain information that foreclosure proceedings were commenced, did not prevent recovery by mortgagee on policy, because they had taken

steps to foreclose mortgage before loss occurred.

**5. Insurance** &#9702;146(3)—**Rule of strict construction of policy is applied as against insurance company.**

Rule of strict construction of insurance policy is applied as against company and conditions of forfeiture contained in policy must be construed strictly against company.

**6. Insurance** &#9702;146(2)—**Every provision of insurance policy should be given effect if possible.**

Every provision of insurance policy should be given effect if possible.

**7. Insurance** &#9702;389(3)—**Insurance company could not avoid payment of policy issued to mortgagee, when notes secured by mortgage were overdue.**

Where insurance agent knew at time of issuing insurance policy to mortgagee that notes by which mortgage was secured were overdue, commencement of foreclosure proceedings by mortgagee did not avoid policy, regardless of mortgage foreclosure clause avoiding policy.

**8. Insurance** &#9702;328(14)—**Insurance company, informed of interest of mortgagee and issuing policy on mortgaged property, cannot resist payment for loss, because mortgagee brought foreclosure proceedings.**

Where insurance agent was fully informed of interest of mortgagee in property and issued policy thereon to mortgagee, company cannot defend against payment for loss on ground that mortgagee had brought foreclosure proceedings before loss, regardless of mortgage foreclosure clause contained in policy.

Appeal from District Court, Bell County; J. B. Hubbard, Special Judge.

Action by E. N. Baker and another against the Liverpool & London & Globe Insurance Company, Limited, and another. Judgment for defendants, and plaintiffs appeal. Reversed, and judgment rendered for plaintiffs.

J. B. Talley, of Temple, for appellants.

Locke & Locke and Ralph Randolph, all of Dallas, for appellee Liverpool & London & Globe Ins. Co.

BLAIR, J. The appellants commenced this action against appellee insurance company upon a policy of fire insurance issued by it, alleging that it undertook and did insure their interest as mortgagees in a grain separator and engine.

The appellee insurance company answered by a demurrer, and specially pleaded as its principal defense a mortgage foreclosure provision in the policy which is alleged to have been violated, thereby releasing it from liability.

Appellee, W. B. Birchum, the mortgagor, was made a party defendant for the purpose of decreeing that he had no interest in the policy of insurance. He answered disclaiming any interest.

At the conclusion of the testimony, the court instructed a verdict for appellee insurance company, hence this appeal. The two principal questions presented by this appeal are: The sufficiency of the appellants' petition to authorize a recovery in the capacity of the insured under the terms of the policy naming the mortgagor as the insured, with loss payable clause making appellants payees as their interest might appear, without a specific prayer or request for a reformation of the policy in that respect, and the legal effect of the mortgage foreclosure provision in the policy as applied to the particular facts in this case.

[1] An agent of appellee insurance company, with authority to write the policy and make the contract for insuring the property, wrote and issued it under the following facts and circumstances: Appellants owned three notes executed by W. B. Birchum to them, aggregating $1,800 plus at the time they applied for the insurance. Birchum had secured these notes to them by a chattel mortgage covering "one No. 14448 Rumely Ideal separator and one No. 13141 sixteen horse power Advance compound engine." On November 18, 1922, after each of the notes had matured, appellants took them to said insurance agent, explained to him that Birchum was the legal owner of the separator and engine, that he was indebted to them as evidenced by the notes and chattel mortgage, and applied for insurance on their interest in the property as mortgagees against loss or damage by fire. The agent told them that appellee insurance company insured the interest of mortgagees; that the regular and customary form of the policy used to effectuate the purpose was to name the mortgagor as nominal beneficiary and to insert or attach a loss payable clause naming the mortgagee as payee; and that the company required a written application, signed by the mortgagor. They went to the mortgagor and the agent explained to him that appellants were applying for insurance on their interest as mortgagees, and that the company required a written application from him, whereupon he signed the application, it being understood that he was in no way applying for the insurance. Appellants then paid the premium for one year and the policy was issued and delivered to them, insuring the separator for $900 and the engine for $850. The loss payable clause, attached to the policy, reads:

"It is agreed that any loss or damage ascertained and proven to be due to the assured under this policy shall be held payable to E. N. Baker as interest may appear, subject, however, to all the terms and conditions of this policy."

This clause was reformed without objection, so as to make E. N. Baker and C. O. Robinson, who were joint owners of the notes,

loss payees. The facts are undisputed and constitute appellants the insured under the contract for the insurance. A mortgagee is the insured, where he applies for the insurance on his interest in the mortgaged property, fully informs the insurance company of that interest, pays the premium and obtains the policy which the insurance company selected, issued, and delivered to effectuate the purpose, declaring to him that such was its regular and customary form of policy for insuring the interest of a mortgagee, though the form of the policy was in fact that regularly and customarily used by the company for insuring the interest of the owner or mortgagor, with a loss payable clause making the mortgagee payee.

[2, 3] The contention in this connection, that appellants' petition is insufficient to authorize a recovery in the capacity of the insured without a specific prayer or request for a reformation of the policy in that respect, is without merit. The appellants pleaded in detail all the facts leading to the execution and delivery of the policy in suit. The Supreme Court in Insurance Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L. R. A. (N. S.) 548, 13 Ann. Cas. 1020, held that, under our blended system of law and equity, it is not necessary to first maintain an action to reform an insurance contract before suing on it, nor is it necessary in suing on such contract, with allegations of facts entitling one to its reformation, that he should pray for or obtain a formal judgment of reformation; but he is entitled to a direct judgment in accordance with the true contract pleaded. We are also of the opinion that, since the policy sued on is by agreement that regularly and customarily used by appellee insurance company for insuring the interest of a mortgagee, and being so intended, no necessity exists for its reformation in this particular as a prerequisite to a recovery, because a judgment for appellants would simply enforce the contract for the insurance as made.

[4] The remaining question is the legal effect of the mortgage foreclosure provision of the policy which reads:

"This entire policy * * * shall be void * * * if, before a fire occurs, the insured shall obtain or receive information that foreclosure proceedings have been commenced, or that notice has been given or posted of sale of any property covered by this policy by virtue of any mortgage or trust deed."

The facts relating to the breach of this provision are: On December 15, 1922, after telling the mortgagor they were going to do so, appellants sued him upon the notes and for foreclosure of the mortgage lien on the insured property, and duly served him with citation on that date. A default judgment for $1,845.69 was rendered on January 2, 1923, with a foreclosure of the mortgage lien. An order of sale issued, and notice of sale was duly published in the county about which the mortgagor had notice. Before the sale took place, the separator was destroyed and the engine damaged by fire, on either the 5th or 6th day of May, 1923. The property remained at all times in the possession of the mortgagor, where it was when insured. Of course, this proceeding constituted a breach of the provision, and if it is applicable to appellants, they cannot recover.

The trial court construed the provision to be a part of appellants' contract for insurance, upon the theory that the phrase in the loss payable clause, "as interest may appear subject, however, to all the terms and conditions of this policy," made it so.

Much litigation has arisen upon the question as to the construction to be given policies of insurance containing the same or similar provisions and conditions as the one here. It also appears, from an examination of the authorities, that there is some conflict in the decisions on this question. The conflict seems to be due in many instances to the fact that some courts construe a contract of insurance literally, and attempt to enforce it as if the parties were dealing at arm's length and upon equal footing, while other courts hold that since the contract is wholly written by the insurance company, it should be strictly construed against it. Another source of difference arises from an application of the doctrine that the law abhors a forfeiture as applied to an insurance contract, some courts applying the rule rigidly, while others hold that the application of the rule is a mere aversion which has resulted in a rule of technical construction as much so as that rule by which it is invoked. The authority (19 A. L. R. 1444) in Smith v. Germania Fire Ins. Co. (102 Or. 569, 202 P. 1088) and in the annotation to that case presents a thorough research of the decisions on this question.

[5] Our Texas courts have universally applied the rule of strict construction against the insurance company as having written the contract, and the rule that the conditions of forfeiture contained in an insurance policy must be strictly construed against the company, because the law abhors forfeitures. Dumphy v. Assurance Co., 107 Tex. 107, 174 S. W. 814. Applying these rules to the policy in question as written, we have concluded that the commencement by the mortgagee of the foreclosure proceedings is not prohibited as to them either by the express terms of the policy, or by any fair implication therein contained.

The loss payable clause in question was attached as a rider to the regular form of policy used by the insurance company for insuring the owner or mortgagor. Without question appellants' rights under the policy as written were created by the rider, which contained the language "subject, however, to all terms and conditions of this policy." Another provision of the policy reads:

"If, with the consent of this company, an interest under this policy shall exist in favor of a mortgagee or, of any person or corporation having an interest in the subject of insurance other than the interest of the insured as described herein, the conditions hereinbefore contained shall apply in the manner expressed in such provisions and conditions of insurance relating to such interest as shall be written upon, attached or appended hereto."

The mortgage foreclosure clause, sought to be enforced by the insurance company here, was nowhere "written upon, attached, or appended to the policy," unless the general language, "as interest may appear, subject, however, to all terms and conditions of this policy," as contained in the loss payable clause, may be construed to have that meaning. In Dumphy v. Insurance Co., supra, the language "written upon, etc.," was construed to mean that the mortgagee is not affected by the conditions of forfeiture, unless they are reiterated, referred to, or indorsed upon, or in some wise made a part of the rider. The great weight of authority and reason supports this decision, though there are some authorities to the contrary. See 19 A. L. R. 1449 and cases there cited. The decisions in these cases are founded upon the rule requiring a strict construction against the insurer in case of ambiguity and, unless the mortgage foreclosure provision is "written upon," etc., the policy, it does not obtain as to the mortgagee named in the policy as loss payee in loss payable clause which creates his interest in or under the policy. The cases, cited in the authority A. L. R. supra, construe the identical provision contained in this policy as to conditions "written upon," etc., the policy. The question remains as to what effect is to be given the language "subject, however, to all terms and conditions of this policy" as contained in the loss payable clause. The Supreme Court of Kansas, in Citizens' State Bank v. Shawnee Fire Ins. Co., 91 Kan. 18, 137 P. 78, 49 L. R. A. (N. S.) 972, passing upon the identical question before us and in construing the identical language as contained in the loss payable clause, said:

"But the court is of the opinion that the clause in question does not differ essentially from the ones considered in the previous decisions referred to, and that no different rule of construction should apply. This holding is in accord with the practical doctrine that the province of insurance companies is to insure, and is consonant with the theory that by a contrary ruling an unsuspecting mortgagee might lose an indemnity for which he had paid in good faith believing he was secure."

[6] This conclusion was reached by that court upon the seeming inconsistency of the terms of an insurance contract insuring a mortgage lien and at the same time providing that proceeding to foreclose the lien insured would destroy or avoid the policy of insur-ance. That same rule obtains here. Other ambiguities and uncertainties also appear on the face of the policy in question. The plain rule of construction requires that every provision of the insurance contract, as evidenced by the policy, shall be given effect if possible. Applying that rule here, the stipulation "subject, however, to all terms and conditions of this policy," and the other provision declaring that the foregoing conditions shall not apply to a mortgagee, unless they are "written upon, attached, or appended to the policy," appear ambiguous and uncertain, at least to the extent that they render the policy subject to more than one construction. The insurance company insists that the general language used in the loss payable clause must be construed as a part of the policy, since the contract is to be construed by its four corners, and applying that rule the mortgage foreclosure provision applies to appellants by reason of that language. If this construction be the correct one, the provision that the other conditions of the policy shall apply to the mortgagee only when "written upon," etc., becomes useless and unnecessary. If this construction be correct, then the language of this provision could have no meaning or application whatever, nor could it modify the remaining covenants of the policy in any manner. Such would result in construing the policy as if the clause "written upon," etc., had never been written in it, and that it was without meaning or purpose, notwithstanding the holding in Dumphy v. Insurance Co., supra, that it had a very definite meaning and purpose. If it were left out, the general language in the loss payable clause represents the entire contract as to appellants being bound by the conditions contained in the policy. In the policy it is a part of it and must be so construed, and when so construed the rule announced in Dumphy v. Insurance Co., supra, applies, and appellants are not bound by the foreclosure provision. But we must construe the whole policy, if possible, and when so construed the provisions in question would read, "subject, however, to all terms and conditions of this policy" when "written upon, attached, or appended to the policy." To construe the general language, used in the loss payable clause as controlling, would render nugatory the other provision. If it be contended that we must select the first clause appearing in the policy as the controlling one, two reasons exist why we should not do so: First, the arrangement of the policy, with numerous attached warranties and conditions, is such that we are unable to determine which one really appears first; and, second, that rule of construction is the last and most shadowy of all rules of construction, and nothing warrants its application here, especially in view of the strict construction rule applied to insurance policies. A similar rule to this was announced in Farmers' Nat. Bank v. Delaware Ins. Co.,

83 Ohio St. 309, 94 N. E. 834; Christenson v. Insurance Co., 117 Iowa, 79, 90 N. W. 495, 94 Am. St. Rep. 286.

[7] Other reasons exist why the insurance company cannot enforce the mortgage clause against appellants. It is undisputed that the notes, secured by the mortgage, were past due at the time appellants applied for the insurance, which fact was fully known to the insurance company. The rule is announced in 26 C. J. 239, § 299bb, that—

the "commencement of foreclosure proceedings will not avoid a policy where insurer knows that the mortgage on the property is overdue."

The following authorities support the text: Butz v. Ohio Farmers' Ins. Co., 76 Mich. 263, 42 N. W. 1119, 15 Am. St. Rep. 316; Michigan State Ins. Co. v. Lewis, 30 Mich. 41.

[8] It is also undisputed that the insurance company undertook to and did insure the interest of appellants as mortgagees after being fully informed of their interest. The following rule of law announced in 26 C. J. 239, § 300cc, applies here:

"But stipulations against commencement of foreclosure proceedings or change of title will not prevent recovery by a mortgagee, where the policy is made payable to him under a union mortgage clause, or where insurer has recognized his rights by issuing the policy to him on his interest, or by consenting to an assignment of the policy to him as additional security."

This text is sustained by the following authorities: Bailey v. American Cent. Ins. Co., 13 F. 250, 4 McCrary, 221; Rostetter v. American Ins. Co., 184 Ill. App. 157; Jones v. Phoenix Ins. Co., 94 Kan. 235, 146 P. 354; Citizens' State Bank v. Shawnee F. Ins. Co., 91 Kan. 18, 137 P. 78, 49 L. R. A. (N. S.) 972; Eddy v. Williamsburgh City F. Ins. Co., 143 N. Y. 656, 38 N. E. 307; Eddy v. London Assur. Corporation, 143 N. Y. 311, 38 N. E. 307, 25 L. R. A. 686 (aff. 65 Hun., 307, 20 N. Y. S. 216).

"Of what use is insurance held by a mortgagee on mortgaged property if the commencement of foreclosure proceedings vitiates the policy?" Jones v. Phoenix Ins. Co., 94 Kan. 235, 236, 146 P. 354.

These rules are founded upon the doctrine of waiver or estoppel on the part of the insurance company to enforce a mortgage forfeiture clause, where it undertakes to insure such interest under that state of facts. The rules apply here. Appellants applied for the insurance in the utmost good faith, fully explaining the interest they wished to insure. The insurance company told them that it insured such an interest, and to effectuate the purpose it issued the policy used by it to regularly and customarily insure the interest of a mortgagor with a loss payable clause attached making the mortgagee the loss payee to the extent of his interest in case of loss or damage by fire. The agent also declared that he had no specific form for insuring a mortgagee's interest, but that the one used was that regularly and customarily used for that purpose. The agent also attended to and satisfied the company's requirement as to obtaining a written application for the insurance from the mortgagor, without any aid or suggestion from appellants. The policy contained many warranties and conditions as between the nominal beneficiary, the mortgagor and the insurance company. No explanation of these was made, nor does it appear that any of the provisions of the policy were discussed at any time. Under such circumstances, it occurs to us that the appellants would not be impressed that the mortgage foreclosure condition in the policy would avoid the policy as to them.

The judgment of the trial court will be reversed, and judgment here rendered for appellants for the sum of $1,503.25, there being no contest as to the extent of the loss and damages, together with interest at the legal rate, from and after May 6, 1923, and all costs of suit.

Reversed and rendered.